194 N.J. Super. 247 (1984)
476 A.2d 842
SANDRA BECK, ET AL., PLAINTIFFS-APPELLANTS,
v.
SANFURD G. BLUESTEIN, M.D., ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 26, 1984.
Decided May 21, 1984.
*251 Before Judges ARD, MORTON I. GREENBERG and TRAUTWEIN.
Martin J. Arbus argued the cause for plaintiffs-appellants.
Douglas J. Harper, Deputy Attorney General, argued the cause for respondent State Board of Medical Examiners (Irwin I. Kimmelman, Attorney General, attorney; James J. Ciancia, Assistant Attorney General, of counsel; Douglas J. Harper, on the brief).
*252 William C. Cagney argued the cause for respondent Sanfurd G. Bluestein, M.D. (Markey & Dailey, attorneys; John P. Markey, of counsel; William C. Cagney, on the brief).
No brief was filed on behalf of respondent Alberto C. DeDios, M.D.
The opinion of the court was delivered by ARD, P.J.A.D.
This is a wrongful death action. Plaintiffs, Sandra Beck and Stanley Arbus, individually and as executors of the Estate of Yetta Arbus, commenced this action by the filing of a complaint on October 27, 1981. The complaint names, inter alia, Sanfurd G. Bluestein, M.D., and Albert DeDios, M.D., as defendants. It alleges that said defendants negligently administered emergency treatment to Yetta Arbus and negligently injected her with a dye or radioactive isotope for the purpose of a lung scan which ultimately led to her death.
Prior to the commencement of the civil action, plaintiffs instituted a letter complaint against the defendants with the State Board of Medical Examiners on December 5, 1980. The complaint incorporated the aforementioned allegations. In response to this complaint, the Board summoned Drs. Bluestein and DeDios to appear before an executive committee for the purpose of reviewing the operative facts and to inquire into the circumstances surrounding the incident. The inquiry was conducted in executive session. A record was made of all testimony.
Thereafter, the Board issued decision letters in which it reprimanded Drs. Bluestein and DeDios and directed the institution of corrective procedures. It is noteworthy that the Board made reference to the testimony of Dr. DeDios in its letter decision. During pretrial discovery in the civil action, plaintiffs deposed Dr. DeDios. Plaintiffs then subpoenaed the transcripts and record of the hearing before the Board of Medical Examiners. They alleged discrepancies between Dr. *253 DeDios' testimony before the Board and his pretrial deposition testimony in the civil action. The Board refused to comply with the subpoena, and as a result, plaintiffs filed a motion before the trial court to compel production of the subpoenaed documents.
The trial judge, following oral argument and after an in camera inspection of the transcripts of the doctors' testimony before the Board, denied plaintiffs' motion to compel production of the documents. We granted leave to appeal from said order.
On appeal, plaintiffs argue that the trial judge committed error in refusing to order the production of the requested material. Plaintiffs contend that they are entitled to the production of the aforementioned transcripts under the Right To Know Law, N.J.S.A. 47:1A-1, et seq.; under the common law right of a citizen to inspect public records, and pursuant to the discovery procedures contained in the Rules of Civil Practice and Procedure. R. 4:10-1, et seq.
For the purpose of the motion, there is little dispute over the facts. Decedent appeared at the office of Dr. Bluestein and Dr. DeDios for a lung scan. She was referred to the doctors by a personal physician because of complaints of shortness of breath and hemoptysis. The lung scan was performed by Dr. DeDios[1] to rule out the possibility of a pulmonary embolism. After the injection of a certain material necessary to perform the lung scan, the decedent displayed some respiratory distress and began coughing up blood. She was taken by ambulance to the hospital where she expired shortly thereafter. The cause of death was acute respiratory failure, secondary to pulmonary edema with shock possibly due to pulmonary emoli or arteriosclerotic heart disease.
In complaining to the Board of Medical Examiners, the plaintiffs made a general assertion of negligence and, in particular, *254 alleged that the defendants' office was ill-equipped with emergency resuscitative devices and lacked the proper personnel to handle the adverse reaction of the decedent to the injection of the dye or isotopes. They also alleged that the defendants allowed approximately 45 minutes to pass without summoning the ambulance or otherwise causing her to be admitted to the hospital.
As indicated, in response to the letter complaint, the Board summoned Drs. Bluestein and DeDios to appear before an executive committee for the purpose of reviewing the operative facts and to inquire into the circumstances surrounding the incident. Dr. DeDios testified before the executive committee on April 22, 1981. Dr. Bluestein testified on August 5, 1981. It is the transcripts of the doctors' testimony which are the subject of this appeal.
Following the doctors' testimony and after a review of the emergency room record, the Board issued decision letters reflecting its evaluation in which it reprimanded Dr. DeDios based upon his failure to prepare a patient record required by N.J.A.C. 13:35-6.12; failure to identify himself as a responsible physician in the office; allowing his judgment not to perform the procedure in the office to be overriden by the patient's request to have the procedure performed; failure to take prompt emergency action when the decedent expressed symptoms of a dire emergency, and failure to instruct the office staff on emergency procedures, including contact with the hospital. Dr. DeDios was reprimanded and directed to immediately institute corrective procedures in each of the aforementioned problems. Dr. Bluestein was also reprimanded and admonished as a "responsible partner" to take the aforementioned corrective measures. Both decision letters were forwarded to plaintiffs' counsel.[2]
*255 Thereafter, during the law suit, plaintiffs deposed Dr. DeDios and concluded there was a discrepancy in his testimony and the reference to his testimony in the Board's decision letters. As a result thereof, plaintiffs subpoenaed the transcript and record of the Board of Medical Examiners. The claimed inconsistencies are as follows:
1. The Board's findings state that Dr. DeDios asserted that the decedent was suffering from dyspnea (respiratory difficulty), orthopnea (inability to breathe, except in an unright position) and hemoptysis (expectoration of blood) upon her arrival to the office; whereas in deposition, Dr. DeDios testified that the decedent was not suffering from said conditions when she arrived at the office;
2. The Board found that the decedent's symptoms worsened significantly after the injection; whereas in deposition, Dr. DeDios testified that her condition remained the same after the injection;
3. The Board found that the office contained emergency equipment, including oxygen and that Dr. DeDios treated the decedent with oxygen; whereas in deposition, Dr. DeDios testified that the decedent was not treated with oxygen because the oxygen tank was empty.
Plaintiffs seek the production of the transcripts of the doctors' testimony for the purpose of impugning Dr. DeDios' credibility when, and if, he testifies, and as direct evidence of the circumstances surrounding the decedent's visit to defendants' office. Originally the trial judge denied plaintiffs' motion to compel the production of transcripts without reviewing the discovery material. We granted plaintiffs' leave to appeal and reversed the order of the trial judge. The matter was then remanded for reconsideration of plaintiffs' application with the direction that the trial judge review in camera the material sought to be discovered. Irval Realty v. Bd. of Pub. Util. Commissioners, 61 N.J. 366, 375-376 (1972). Thereafter, the trial judge again denied plaintiffs' application and issued a letter opinion in support of the denial concluding that the State's interest in maintaining confidentiality clearly outweighed the need for discovery in this matter. We again granted plaintiffs' application for leave to appeal.[3]
It is axiomatic that:

*256 A person seeking access to public records may today consider at least three avenues of approach. He may assert his common law right as a citizen to inspect public records; he may resort to the Right to Know Law, N.J.S.A. 47:1A-1 et seq., or, if he is a litigant, he may avail himself of the broad discovery procedures for which our rules of civil practice make ample provision. [Irval Realty v. Bd. of Pub. Util. Commissioners, 61 N.J. at 372].
Our Legislature in enacting the Right To Know Law, N.J.S.A. 47:1A-1, et seq., declared "... it to be the public policy of this State that public records shall be readily accessible for examination by the citizens of this State, with certain exceptions, for the protection of the public interest." N.J.S.A. 47:1A-1. The definition of a public record is contained within Section 2 of that statute which provides:
Except as otherwise provided in this act or by any other statute, resolution of either or both houses of the Legislature, executive order of the Governor, rule of court, any Federal law, regulation or order, or by any regulation promulgated under the authority of any statute or executive order of the Governor, all records which are required by law to be made, maintained or kept on file by any board, body, agency, department, commission or official of the State or of any political subdivision thereof or by any public board, body, commission or authority created pursuant to law by the State or any of its political subdivisions, or by any official acting for or on behalf thereof (each of which is hereinafter referred to as the "custodian" thereof) shall, for the purposes of this act, be deemed to be public records. Every citizen of this State, during the regular business hours maintained by the custodian of any such records shall have the right to inspect such records. [N.J.S.A. 47:1A-2; emphasis supplied].
Unlike a citizen's common law right to inspect and examine public records, the Right To Know Law, N.J.S.A. 47:1A-1, et seq., imposes no requirement of standing or interest to obtain access to public records. Nero v. Hyland, 76 N.J. 213 (1978); Irval Realty v. Bd. of Pub. Util. Commissioners, 61 N.J. at 372-373; Citizens For Better Ed. v. Bd. of Ed. Camden, 124 N.J. Super. 523, 528 (App.Div. 1973).
In Irval, the Supreme Court succinctly summarized this principle as follows:
The Right to Know Law, N.J.S.A. 47:1A-1 et seq., seems to require no such showing. Its intention, as we read the statute, is to afford broad access to public records to all citizens, whether or not they are able to demonstrate any personal or particular interest in the material which they seek to examine. In support of this conclusion we note in the first place that the statute itself *257 contains no requirement of personal or other interest. On its face it applies to every citizen alike. Secondly, it seems clear that such was the interpretation placed upon it at the time of its enactment. Thus in a press release, which forms part of defendant's appendix, dated about 10 days before the act took effect, Governor Hughes said,
"The purpose of Chapter 73 [The Right to Know Law], however, is to make readily available to the general public official records of government with the right to inspect and obtain copies of those records. The power to exclude documents therefrom is intended to be exercised only where it would not be in the interest of the public to permit indiscriminate disclosure or copying of certain records. [Emphasis added]."
Again, in an Executive Order of August 1, 1963, one month after the law had taken effect, the same Governor referred to the "indiscriminate exposure" of records for which the statute provided and added that such exposure was "without regard to the motivation of those seeking to inspect or copy." Thus the right given by the statute may differ from the common law right of access to public records. The latter requires a showing of interest and applies generally to all public records, broadly defined. The former is a right available to any member of the general public but the range of access is limited by the definitions and exemptions appearing in the statute. We should add that the statute clearly was not intended to diminish or in any way curtail the common law right of examination. That right remains unaffected by this legislation. [Id. at 372-373].
Thus, it is clear that plaintiffs have an absolute right to the production of the transcripts under N.J.S.A. 47:1A-1, et seq., provided said transcripts are deemed "public records." As indicated, the plain language of the act defines "public records" to include:
... all records which are required by law to be made, maintained or kept on file by any board, body, agency, department, commission or official of the state.... [N.J.S.A. 47:1A-2; emphasis supplied].
There is no dispute that the documents in question were generated by a public body, namely, the Board of Medical Examiners. Also, it is not disputed that there is no statutory or regulatory provision requiring the record in question to be made or kept by the Board. Nevertheless, plaintiffs maintain that there is statutory authority mandating that an investigation be conducted by the Board, and therefore, the records are deemed "public records." We disagree.
It is noteworthy that plaintiffs do not cite a specific statutory or regulatory provision requiring the Board of Medical Examiners *258 to conduct investigations. We are convinced there are none. Pursuant to N.J.S.A. 45:1-18, the Board of Medical Examiners is granted discretionary authority to conduct investigations. This section provides:
Whenever it shall appear to any board, the director or the Attorney General that a person has engaged in, or is engaging in any act or practice declared unlawful by a statute or regulation administered by such board, or when the board, the director or the Attorney General shall deem it to be in the public interest to inquire whether any such violation may exist, the board or the director through the Attorney General, or the Attorney General acting independently, may exercise any of the following investigative powers:

a. Require any person to file on such form as may be prescribed, a statement or report in writing under oath, or otherwise, as to the facts and circumstances concerning the rendition of any service or conduct of any sale incidental to the discharge of any act or practice subject to an act or regulation administered by the board;
b. Examine under oath any person in connection with any act or practice subject to an act or regulation administered by the board;
c. Inspect any premises from which a licensed profession or occupation is conducted;
d. Examine any goods, ware or item used in the rendition of any professional or occupational service;
e. Examine any record, book, document, account or paper maintained by or for any professional or occupational licensee in the regular course of practicing such profession or engaging in such occupation;
f. For the purpose of preserving evidence of an unlawful act or practice, pursuant to an order of the Superior Court, impound any record, book, document, account, paper, goods, ware, or item used or maintained by or for any board licensee in the regular course of practicing such profession or engaging in such occupation. In such cases as may be necessary, the Superior Court may, on application of the Attorney General, issue an order sealing items of material subject to this subsection.
In order to accomplish the objectives of this act or any act or regulation administered by a board, the Attorney General may hold such investigative hearings as may be necessary and may issue subpenas to compel the attendance of any person or the production of books, records or papers at any such hearing or inquiry. [Emphasis supplied].
The statute is clearly permissive, and there is no statutory or regulatory requirement which either mandates an investigation be conducted or an investigatory record be made, maintained or kept. As such, the records are not public records within the meaning of N.J.S.A. 47:1A-1. Accordingly, the *259 disclosure sought by plaintiffs is not a matter of statutory right. Nero v. Hyland, 76 N.J. at 220-221.
Plaintiffs' second avenue for disclosure is provided by the common law as it presently exists in New Jersey. In Irval, the Supreme Court commented on a citizen's common law right to examine public records as follows:
At common law a citizen had an enforceable right to require custodians of public records to make them available for reasonable inspection and examination. It was, however, necessary that the citizen be able to show an interest in the subject matter of the material he sought to scrutinize. Such interest need not have been purely personal. As one citizen or taxpayer out of many, concerned with a public problem or issue, he might demand and be accorded access to public records bearing upon the problem, even though his individual interest may have been slight. Ferry v. Williams, 41 N.J.L. 332 (Sup.Ct. 1879); Taxpayers Association v. City of Cape May, 2 N.J. Super. 27 (App.Div. 1949); Moore v. Board of Chosen Freeholders of Mercer County, 76 N.J. Super. 396 (App.Div. 1962), mod. 39 N.J. 26 (1962). Yet some showing of interest was required. [Id. at 372].
Accord Nero v. Hyland, 76 N.J. at 221-222; Citizens For Better Ed. v. Bd. of Ed. Camden, 124 N.J. Super. at 528.
The common law right to inspect and examine is not curtailed by the Right To Know Law, N.J.S.A. 47:1A-1 et seq. Irval Realty, supra. A public record under common law is much broader than that under N.J.S.A. 47:1A-1 et seq. It has been defined as:
"* * * one required by law to be kept, or necessary to be kept in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said, or done, or a written memorial made by a public officer authorized to perform that function, or a writing filed in a public office. The elements essential to constitute a public record are * * * that it be a written memorial, that it be made by a public officer, and that the officer be authorized by law to make it; * * *."
Josefowicz v. Porter, 32 N.J. Super. 585, 591 (App.Div. 1954), quoting 76 C.J.S., Records, § 1 at 112. See also, Nero v. Hyland, supra.
In the case at bar there can be no doubt the records sought are public records under the common law. Transcripts of proceedings before the executive committee of the Board of Medical Examiners which contain testimony concerning the *260 cause and circumstances of the death of the plaintiff-decedent are written memorials made by public officers in the exercise of public functions, which they are lawfully authorized to perform. The definition of a common law public record is much more expansive than the public record defined in the Right To Know Law. N.J.S.A. 47:1A-2.
Also, it cannot be disputed that plaintiffs have a clear personal interest in examining the transcripts as an aid in preparing their liability claims for trial. The transcripts contain testimony concerning the care and treatment rendered to the decedent which is alleged to have contributed to her death.
Nonetheless, the existence of plaintiffs' interest does not provide an absolute right to the transcripts of proceedings, Nero v. Hyland, supra; Irval Realty, supra. Rather, a test has been developed which requires a judge to balance the public's interest in maintaining the confidentiality in the documents against plaintiffs' interest in examining them. Ibid.
The record indicates that pursuant to our instructions the trial judge examined the subject documents in camera, and without indicating the factors which he considered, found the State's interest in confidentiality to outweigh the plaintiffs' interest in examining them. We disagree.
It is apparent that plaintiffs' common law right to examine and inspect the documents is superior to the interest of the Board in maintaining its confidentiality. Clearly, the care and treatment rendered to plaintiff-decedent while a patient of the defendants forms the basis of her allegations in the civil complaint. Full discovery and disclosure of the care and treatment provided are essential to the preparation of this case, and in our view, would serve the ends of justice. The record reveals that the defendant, Dr. DeDios', testimony both before the Board and in deposition is inconsistent in certain respects. The transcript of his testimony before the Board contains substantive evidence and impeachment material directly concerning *261 decedent's condition on arrival to the office and the care and treatment rendered. Surely, this information is relevant, will aid in the preparation of plaintiffs' case and will otherwise facilitate proof at trial.
The Attorney General argues that to permit disclosure of the documents would impair the efficiency of the Board in its investigative activities and would create a chilling effect on future licensee testimony before the Board. However, there is no evidence to suggest this possible result may occur, and, in any event, this purported justification is not sufficient to prevent disclosure in this case.
We agree with the reasoning of the trial judge in Lakewood Trust Co. v. Fidelity and Deposit Co., 81 N.J. Super. 329 (Law Div. 1963), who rebutted similar contentions upon holding:
The Attorney General argues that in the event the court opens the reports for inspection by the movants, the efficiency of the Department would be impaired. A potential decrease, if any, in efficiency of the Department has not been in other jurisdictions a basis for withholding material matter from litigation and should not be in this State. The public interest is best served by promoting fair and open trials free of surprise so as not to simulate a sporting event. Full disclosure of relevant matter is essential to accomplish this purpose. Further, where as here the reports sought to be withheld from litigants form a part of the complaint upon which the action is based, it is the opinion of this court that the interests of substantial justice require that the contents of those reports be made known to the party against whom they are being used. The fact that the reports may not be admissible in evidence at trial does not alter this conclusion. [Id. at 342-343].
Similarly, the Attorney General's reliance on our decisions in Greenspan v. State, 174 N.J. Super. 332 (App.Div. 1980), and River Edge Savings and Loan Ass'n v. Hyland, 165 N.J. Super. 540 (App.Div. 1979), certif. den. 81 N.J. 58 (1979), is misplaced. In both cases we recognized the long-standing privilege against disclosure of information in the possession of law enforcement officials concerning the existence or occurrence of criminal activities. While the privilege is not absolute, discovery will not be allowed unless the need from the standpoint of essentiality is supported by detailed findings.
*262 Thus, in Greenspan we determined that the State's interest in confidentiality outweighed the plaintiff's need to discover in a civil suit the entire file compiled by the State Attorney General's Office, including the minutes of State Grand Jury proceedings, in the investigation of plaintiff in the Medicaid program. 174 N.J. Super. at 333. In River Edge Savings and Loan Ass'n we likewise rejected plaintiff's attempts to obtain in a civil suit the Attorney General's entire file, including the name and address of informers, investigative materials obtained by State officials and a transcript of proceedings before the Grand Jury in connection with an investigation of the plaintiff. 165 N.J. Super. at 544-545.
Disclosure of investigative information in the possession of law enforcement officials is subject to the State's paramount interest in protecting witness security, the State's relationship with its informants and witnesses, and other confidential relationships. Also, the information is critical to the uncovering and prosecution of criminal offenses, and thus to effective law enforcement. As such, we held in River Edge Savings and Loan Ass'n, supra, that disclosure may only be had:
... [W]here there are present considerations of fundamental fairness or other considerations of a compelling nature such as outweigh the imperative of the interests of the State in protecting and maintaining the confidentiality of the information, .. . (Citations omitted) ...
The test in civil cases is the same as that utilized in criminal cases, except that in civil cases in applying the test the interests of the State in maintaining confidentiality "are entitled to a greater degree of respect." (Citations omitted). [Id. at 544].
The vital public interest in confidentiality recognized in Greenspan v. State, supra, and River Edge Savings and Loan Ass'n v. Hyland, supra, is simply not present in the case at bar. The information plaintiffs seek does not place in jeopardy or weaken law enforcement. Plaintiffs merely seek licensee testimony before the Board of Medical Examiners relating directly to the medical care and treatment rendered to the decedent. As such, we find our decisions in Greenspan and *263 River Edge Savings and Loan Ass'n not in conflict with our determination of the matter under review.
Moreover, we find it pertinent that the Attorney General has not cited any statutory or regulatory authority declaring the investigative materials of the Board of Medical Examiners to be privileged or confidential. Also, unlike Nero v. Hyland, supra, and Irval Realty v. Bd. of Pub. Util Commissioners, supra, the materials in the instant case have not been exempted by "... `executive order of the Governor' or `... by any regulation promulgated under the authority of any ... executive order of the Governor.' N.J.S.A. 47:1A-2." Irval Realty v. Bd. of Pub. Util. Commissioners, 61 N.J. at 371.
However, although the Attorney General does not direct us to statutory or regulatory authority declaring the Board's investigative materials to be privileged or confidential, we recognize the extreme sensitivity of the Board's interest and the potential for abuse by prospective plaintiffs filing complaints against physicians to utilize the Board and its investigative powers as an additional discovery vehicle. Each case requires an exquisite weighing process by the trial judge. In the instant case, we have considered the appropriate factors and having weighed the parties' competing interests, feel disclosure is necessary in this case, although not in every case. Here, it is clear that plaintiffs' common law right to examine and inspect the documents is superior to the interest of the Board in maintaining its confidentiality.
In support of our determination, we consider of utmost importance the fact that the decedent cannot testify concerning the incident in question. The decedent's subjective complaints, the physical examination performed, and the care and treatment rendered are peculiarly within the knowledge of the defendants. The record reveals that the defendants failed to maintain a patient record of the decedent setting forth her subjective complaints, objective findings, nature of treatment rendered and diagnosis of her physical condition. The failure *264 to maintain a patient record was one factor cited by the Board justifying a reprimand. Also, the decedent expired within 60 minutes after her arrival to the emergency room. An autopsy was not performed. Consequently, the only evidence concerning the entire incident in question appears to be the testimony of Dr. DeDios. Here, unlike the factual complex in Greenspan v. State, we are satisfied "... that this information sought from this source is a sine qua non to the perfection of plaintiffs' cause of action." Greenspan v. State, 174 N.J. Super. at 335.
In this regard, our in camera inspection of Dr. DeDios' testimony before the Board, and our review of his trial deposition suggests inconsistencies in critical areas. The inconsistencies in the doctor's testimony relate directly to the decedent's condition both on arrival to the office and following the injection, as well as to the nature of the emergency treatment provided. As indicated, the transcripts of the doctor's testimony both before the Board and in trial deposition contains the only substantive evidence concerning the care and treatment rendered the decedent. Also, the transcripts may be utilized as an impeachment tool if, and when, he testifies. We further note that the public interest served by the Board's inquiry into the circumstances of plaintiff's death is parallel to the executor's interest in ascertaining the basis for a wrongful death and survival action. After all, the Board was created for the purpose of serving the public in the area of regulating the practice of medicine. Finally, it is noteworthy that the Board's assertion that to permit discovery would chill licensee testimony is dubious, especially where, as here, the licensee-defendant Bluestein argues that discovery in favor of plaintiffs should be granted.
As indicated, we do not intend our decision to be understood as granting a carte blanche right to discover the Board's investigative materials. Disclosure should only be permitted in exceptional cases. We limit our decision to situations *265 where it is clear that plaintiffs' needs outweigh the Board's interest in confidentiality. In our judgment the factors aforementioned warrant such an exception.
Accordingly, the trial judge's order denying disclosure is reversed, and the matter is remanded with the direction that an order be entered compelling the Board to produce the documents which are subject to the subpoena.
Reversed and remanded. We do not retain jurisdiction.
NOTES
[1] Dr. Bluestein was not present during the treatment of Yetta Arbus but was considered by the Board of Medical Examiners to be "a responsible partner."
[2] In the course of oral argument, counsel for Dr. Bluestein urged release of the subpoenaed documents.
[3] This court also reviewed in camera the material sought to be discovered.