206 N.J. Super. 1 (1985)
501 A.2d 985
THE RED BANK REGISTER, INC., A CORPORATION, PLAINTIFF-APPELLANT,
v.
THE BOARD OF EDUCATION OF LONG BRANCH, NEW JERSEY, A BODY CORPORATE; JAMES A. VACCARO, FRANK PALLONE, ALICE B. NICAS, DONALD B. WOOD, JOHN A. TOBIA, JR., GODFREY BUZZELLI, MERRICK TOMAINE, ROBERT LIEBERMAN, WILLIAM KNOX, HERBERT KOREY AND JOHN DOE, INDIVIDUALS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 28, 1985.
Decided November 20, 1985.
*3 Before Judges MORTON I. GREENBERG, J.H. COLEMAN and HAVEY.
Frederick L. Whitmer argued the cause for appellant (Pitney, Hardin, Kipp & Szuch, attorneys; Mr. Whitmer and Julianne Flach Sowinski, on the brief).
Thomas J. Warren argued the cause for respondents (McOmber & McOmber, attorneys; Kurt M. Hughes, on the brief).
The opinion of the Court was delivered by MORTON I. GREENBERG. P.J.A.D.
This matter comes on before the court on appeal from an order dismissing this action in which plaintiff claims a right to examine certain documents in the possession of defendant.[1] *4 Inasmuch as employees of plaintiff, a corporation publishing a newspaper, The Register, desired to view the documents in connection with preparation of an article or articles relating to a then impending school district election, the matter was dealt with in the trial court on an expedited basis.
The action was started on March 25, 1985 by plaintiff filing a complaint in lieu of prerogative writs against defendant Long Branch Board of Education. Plaintiff sought an order allowing it access to so-called Curriculum Mapping Reports prepared for and held by defendant. Plaintiff conceived it was entitled to relief under the New Jersey Right to Know Law, N.J.S.A. 47:1A-1, the common law, U.S. Const., Amend. I and N.J. Const. (1947), Art. I, par. 6. Plaintiff sought immediate discovery, summary disposition of the matter under R. 4:67 and an expedited plenary hearing. With the complaint plaintiff filed a certification of Alan Sipress, one of its reporters, and an affidavit of Frederick L. Whitmer, its attorney. On March 26, 1985 defendant submitted a brief in opposition to plaintiff's case and on that day the trial judge heard oral argument. On March 27, 1985 defendant filed an answering affidavit of Herbert Korey, its superintendent of schools. On the same day the judge, on the basis of the record before him which included the certification and affidavits as well as the curriculum reports and without a plenary hearing, found that plaintiff had no statutory or common law right to see the documents and thus he dismissed the action. In addition, the judge denied plaintiff's request for an evidentiary hearing. The trial judge entered an order on March 27, 1985 reflecting this decision. Plaintiff immediately appealed and unsuccessfully sought a summary reversal. Thus the matter has come on before us for plenary disposition.
The following facts were set forth in the affidavits. Around March 1, 1985 Sipress, who was reporting on the impending *5 school district election, learned of the existence of six reports prepared by defendant and contacted Korey in an effort to obtain copies of them. Korey originally agreed to show them to Sipress. However, when Sipress went to Korey's office to see the reports, Korey, acting at the direction of defendant which in turn relied on advice of counsel, would not give him three reports entitled "Curriculum Mapping Project/Teacher Allocated Time" as they had been not formally accepted by it and contained outdated data from 1980-1981 as well as personnel evaluations. Sipress' affidavit suggested he had information that the reports dealt with mismanagement of school funds, proposed curriculum improvements and did not contain personnel evaluations but rather referred to individuals in general terms. Whitmer's affidavit was essentially a legal argument supporting plaintiff's right to relief.
In his affidavit Korey explained the background leading to preparation of the curriculum reports and described their contents. The work on the reports originated with Dr. Fenwick English, an educational specialist with the accounting firm of Peat, Marwick & Mitchell. English had written extensively about teacher time on task in the classroom and the linkage of that time with what was expected to be taught and with testing instruments a school board used to identify student progress. This concept is referred to as "curriculum mapping." Defendant had engaged Peat, Marwick & Mitchell to make a report on curriculum mapping. Teachers employed by defendant were to cooperate in the study by showing how much time they spent on particular areas of instruction. English, however, left Peat, Marwick & Mitchell before the project was completed and this led to the involvement in the reports of Dr. Donald Weinstein. Weinstein had been employed by defendant as an administrator, but on April 21, 1982 resigned effective June 30, 1983. Defendant and Weinstein subsequently agreed that he would serve as a consultant to defendant from July 1, 1983 to December 31, 1983 and in this capacity would report to the assistant superintendent for curriculum and instruction and work on the study *6 of curriculum mapping. Korey asserted that Weinstein helped to computerize the data gathered and summarize the results. However, escalating computer costs halted the computerization of the data, and in Korey's view Weinstein's summary was based on "incomplete and imprecise data." Thus defendant did not accept the reports but instead acknowledged them as internal working documents.
The trial judge rendered an oral opinion concluding that the curriculum reports were not public records pursuant to either the Right to Know Law or the common law as they were not required or authorized by law to be made. The judge did find that the curriculum reports had been made by a public official and were written memorials, requirements for a document to be a common law public record. The judge further held that neither discovery nor a plenary hearing was needed. Accordingly, the complaint was dismissed with prejudice and the court entered the final order of March 27, 1985 reflecting its decision. Plaintiff now appeals, claiming it was entitled to discovery and a plenary hearing and further asserting that in any event the curriculum reports are public records under the Right to Know Law and at common law.
We deal first with and reject plaintiff's claim it was entitled to a plenary hearing. The trial judge examined the reports in camera and consequently knew their contents, so no hearing was required to familiarize him with the reports. Further, the parties raise no issue as to how the reports were created. In the circumstances the matter was properly disposed of on affidavits. R. 4:67-5. In any event in view of our disposition of the case this issue is moot.
The curriculum reports are clearly not public records within the Right to Know Law. Under N.J.S.A. 47:1A-2 a record is a public record if by law it is required to be made, maintained or kept on file by a public agency or official. See Nero v. Hyland, 76 N.J. 213, 220 (1978). We are aware of no law that required defendant to have the reports made. Nor was defendant required to maintain or keep the reports on file. *7 N.J.S.A. 18A:17-9(b), cited by plaintiff, is of no aid to it. That section simply requires the secretary of a school board to keep and maintain all contracts, records and documents belonging to the board. But the section does not require that the board keep documents. See Collins v. Camden Cty. Health Dept., 200 N.J. Super. 281 (Law Div. 1984) (a requirement that a secretary of a health board keep records of official actions of the board does not result in personnel evaluations held by the board being classified as statutory public records).
Plaintiff's contention that the curriculum reports are public records at common law and therefore subject to disclosure has merit. It is well established that the common law right to inspect and examine public documents is not curtailed by the Right to Know Law and the definition of public record at common law is broader than under that statute. Beck v. Bluestein, 194 N.J. Super. 247, 259-260 (App.Div. 1984). A public record under the common law is
... one required by law to be kept, or necessary to be kept in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said, or done, or a written memorial made by a public officer authorized to perform that function, or a writing filed in a public office. The elements essential to constitute a public record are ... that it be a written memorial, that it be made by a public officer, and that the officer be authorized by law to make it.... (Citations omitted.)
Nero v. Hyland, supra, 76 N.J. at 222. See also McClain v. College Hosp., 99 N.J. 346, 354 (1985). Thus the Supreme Court has indicated that (1) a written memorial (2) made by a public officer (3) in the exercise of a public function which he is lawfully authorized to perform is a common law public record. Nero v. Hyland, supra, 76 N.J. at 222.
Obviously the reports are written memorials. The question of whether the reports were made by a public officer is more difficult to answer. The trial judge, though denying plaintiff relief, considered Weinstein to be a public officer within Duncan v. Board of Fire, &c., Commissioners, 131 N.J.L. 443 (Sup.Ct. 1944), which held a person is a public officer if he is "... invested with any portion of political power partaking in any degree in the administration of civil government, and *8 performing duties which flow from the sovereign authority." Id. at 446. Defendant challenges this finding because Weinstein worked as a consultant and was thus not an "employee" of the board.
While we agree with the trial judge that the curriculum reports should be regarded as having been made by a public officer we reach this result on a different basis. Here there is no question but that defendant's members were public officers who commissioned the report. In McClain v. College Hosp., supra, 99 N.J. at 346, the Supreme Court considered whether a copy of a report by a consulting expert made for the Board of Medical Examiners was discoverable as a common law public document by the plaintiff in a tort action. The court stated it could be and said: "A consultant acts on behalf of the agency. To that extent the consultant's opinion is the opinion of the agency." Id. at 363. Thus, as Weinstein acted for defendant, we hold the curriculum reports were made by a public officer.[2]
The trial judge found that the curriculum reports were not made by an officer authorized by law to prepare them as no law specifically authorized or resulted in the preparation of the reports. In our view his ruling was inconsistent with the decision of the Supreme Court in Nero v. Hyland, supra, 76 N.J. at 213. In Nero v. Hyland the Supreme Court held that a background check made by the State Police for the Governor was not a public record within the Right to Know Law as there was no requirement in law it be made. But the court said that it may have been a common law public record as it was a written memorial, made by public officers in the exercise of *9 public functions which they were lawfully authorized to perform. Id. at 220-222. The court recognized that the Governor had the "privilege" of ordering such an investigation of a possible appointee. Thus it seems clear that under Nero v. Hyland a public officer is "authorized by law" to make a document if his actions in preparing it are not contrary to law. A similar result was reached in Beck v. Bluestein, supra, 194 N.J. Super. 247, where we held that transcripts of investigatory hearings before the Board of Medical Examiners were public records at common law even though there was no statutory or regulatory requirement that the hearings be held or recorded. Id. at 258-260. Here we are satisfied that defendant, within its broad authority to operate the schools and engage employees, had authority to employ Weinstein to work on the reports and thus we hold that at common law they are public records.[3]See N.J.S.A. 18A:11-1; N.J.S.A. 18A:16-1.
Our determination that the curriculum reports are public records does not end our inquiry, for a person exercising the common law right of disclosure must demonstrate some personal or particular interest in the material sought. See Nero v. Hyland, supra, 76 N.J. at 222; Irval Realty v. Bd. of Pub. Util. Commissioners, 61 N.J. 366, 372-373 (1972). We are satisfied, however, that a newspaper's interest "... to keep a watchful eye on the workings of public agencies" is sufficient to accord plaintiff standing. Nixon v. Warner Communications, Inc., 435 U.S. 589, 598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570, 579-580 (1978).
*10 But even though the reports are public records and plaintiff has standing to seek their disclosure, it is possible that the interest of the public in maintaining their confidentiality outweighs plaintiff's interest in examining them. In such circumstances it would be appropriate, depending upon their content, to maintain their confidentiality in whole or in part. See Beck v. Bluestein, supra, 194 N.J. Super. at 260. The trial judge, of course, engaged in no balancing test as he found the materials were not public records.
With respect to the weighing process plaintiff argues the curriculum reports should be disclosed to maintain a free press and to further the important role of investigative reporting in uncovering abuse. See National Broadcasting Company, Inc. v. F.C.C., 516 F.2d 1101, 1123 (D.C. Cir.1974), cert. den. 424 U.S. 910, 96 S.Ct. 1105, 47 L.Ed.2d 313 (1976). Specifically, plaintiff claims the public has a right to evaluate the curriculum reports and to ascertain whether they disclose mismanagement of public funds. Defendant asserts that the value of encouraging innovative and experimental evaluative reports outweighs plaintiff's claims concerning the imperatives of investigative journalism. Defendant considers the reports as "internal working documents," disclosure of which would inhibit the creative and candid evaluation of our public schools. Defendant further asserts that release of the reports would be contrary to the assurances made by it to the participants in the project that no personal negative results would be commented upon in any type of publicly released documents. Defendant also contends that release of the reports would improperly disclose personnel evaluations.
While we have seen the reports we think that in the first instance the trial court should balance the interests for which the parties contend. Certainly much of the material in the reports is factual and should be disclosed. See McClain v. College Hospital, supra, 99 N.J. at 360. But it may be that the public interest would be furthered by not revealing evaluative material. See Wylie v. Mills, 195 N.J. Super. 332 (Law Div. *11 1984). In the circumstances we have determined to remand the matter to the trial court to balance the public's interest in maintaining confidentiality in the reports against plaintiff's interest in examining them. We would expect the judge to examine the reports and edit out the matters, if any, which should not be disclosed.
We have not discussed plaintiff's constitutional contentions for two reasons. Firstly, plaintiff seems primarily to mention the constitutional provisions in connection with its common law and statutory contentions rather than as independent grounds for relief. Secondly, we are satisfied that in any event plaintiff on a constitutional basis would be entitled to no greater relief than it will obtain under the common law.
The order of March 27, 1985 is affirmed to the extent it denied plaintiff's request for an evidentiary hearing. It is otherwise reversed and the matter is remanded to the Superior Court, Law Division, Monmouth County, for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.
NOTES
[1] It is unclear whether the attorneys for respondent appeared for all defendants or only the Board of Education. In our view the point is not significant for the other defendants are employed by or are members of the Board. Consequently as a matter of convenience we refer to defendant in the singular.
[2] We note that the three reports are all dated before June 30, 1983 when Weinstein's resignation became effective, and thus we have difficulty understanding defendant's contention that he worked on the reports as a consultant. We acknowledge, however, that the expedited proceedings have not resulted in a completely clear record. But we need not dwell on the issue for if Weinstein was an employee rather than a consultant when he worked on the reports, defendant's case to resist classification of the documents as common law records would be weakened.
[3] In this case we find defendant had authority to have the reports made. Thus we have no occasion to comment on whether a public agency could withhold documents otherwise qualifying as common law public records on the ground it had acted unlawfully in having the documents prepared. Arguably the case for disclosure in such circumstance would be stronger rather than weaker than a case in which the preparation of the documents had been authorized. We point out that while the Supreme Court has included the requirement that the preparation of a document be authorized for it to be a public record, in the cases we have cited in this opinion there was never a finding of illegality.