**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1019-18T4

IN THE MATTER OF APPEAL
OF LOCAL ETHICS BOARD
DECISIONS.

_____

Argued telephonically May 26, 2020 –
Decided July 21, 2020

Before Judges Messano and Ostrer.

On appeal from the New Jersey Department of Community Affairs.

Roger Elliot Koch argued the cause for appellants Roger Koch, Ida Ochoteco, Howard Greenberg, Carl Cuchiara, Tracy Goldberg, Jeremy Perlmutter, Amy Levine, John Beggiato, Robert Easton, and Ann Iannone.

Philip Gary George argued the cause for respondent Hillsborough Township Ethical Standards Board (Eric M. Bernstein & Associates, LLC, attorneys; Eric Martin Bernstein, of counsel and on the brief; Philip Gary George, on the brief).

Beau Charles Wilson, Deputy Attorney General, argued the cause for respondent Local Finance Board (Gurbir S. Grewal, Attorney General, attorney; Donna Sue

Arons, Assistant Attorney General, of counsel; Beau
Charles Wilson, on the brief).

PER CURIAM

Appellants, residents of Hillsborough Township, filed two complaints with the Hillsborough Ethical Standards Board (the Board), a municipal ethics board established pursuant to the Local Government Ethics Law (LGEL), N.J.S.A. 40A:9-22.1 to -22.25. One complaint alleged violations of the LGEL by Township Committeewoman, Gloria McCauley, and the Township administrator, Anthony Ferrara; a second alleged violations by McCauley and the Township clerk, Pamela Borek. The gist of the complaints was that as a member of the township's governing body, McCauley voted to approve salary increases for Ferrara and Borek, and, several months later, both listed their homes for sale with McCauley as the listing real estate agent.

The Board held a public meeting on both complaints. As to the complaint involving the administrator, the Board heard from Hillsborough's mayor and counsel for the appellants, himself a signatory of the complaint. A May 23, 2017 resolution of the township committee was marked into evidence. In response to questions posed by Board members, Borek, who also served as clerk of the Board, explained that the "resolution establishing the annual salaries . . . [was] for all those employees not covered by collective bargaining agreements." She further

2

explained that the budget planning process began in "the first quarter[,]" and the "resolution coincided with the budget adoption[.]"  The salaries of more than thirty individual employees named in the resolution, including Ferrara and Borek, were set and made effective January 1, 2017.  The complainants introduced the real estate listing for the administrator's home.  After going into executive session, the Board emerged and approved the December 9, 2017 resolution, which determined the complaint "to be without merit, and . . . therefore dismissed."[1]

---

[1]  The procedure complies with the LGEL regarding the conduct of hearings before a municipal ethics board.  Pursuant to N.J.S.A. 40A:9-22.24, a municipal ethics board must acknowledge the receipt of a complaint made against any local government officer or employee "and initiate an investigation concerning the facts and circumstances . . . in the complaint."  If the board determines it lacks jurisdiction, or the complaint is "frivolous or without any reasonable factual basis," it must reduce its "conclusion to writing and . . . transmit a copy . . . to the complainant and to the local government officer or employee" involved.  Ibid.  Otherwise, the board must notify the affected officer or employee and provide him or her with "the opportunity to present the . . . board with any statement or information concerning the complaint which he [or she] wishes."  Ibid.  If the board "determines that a reasonable doubt exists as to whether" the officer or employee "is in conflict with the municipal code of ethics or any financial disclosure requirements," it shall conduct a hearing in accordance with N.J.S.A. 40A:9-22.12.  Ibid.  That section of the LGEL, in turn, requires a hearing "in conformity with the rules and procedures, insofar as they may be applicable, provided for hearings by a State agency in contested cases under the 'Administrative Procedures Act[.]'"  N.J.S.A. 40A:9-22.12

Counsel for the complainants served written notice withdrawing the second complaint against McCauley and Borek prior to the scheduled December 23, 2017 Board meeting. Nevertheless, the Board convened, having served public notice of the meeting and individual notice on both Borek and McCauley, and having decided, on the advice of its counsel, that it was duty bound to "make a determination on the face of the complaint as to whether any further proceedings should take place."[2]

Once again, the mayor addressed the Board, as did a Township committeeman. The mayor referenced "the annual salary resolution" discussed during the prior hearing, and the committeemen described the salary and budget process.[3] He explained that the committee considers the salaries of municipal employees "in comparison to some of their local peers." The Board approved a similar resolution dismissing the complaint because it lacked merit.

---

[2] Borek did not serve as clerk to the Board during these proceedings.

[3] Reference is made in the transcript to two resolutions. The appellate record includes a copy of the May resolution listing the employees and their proposed salaries; a copy of the May resolution adopting the entire budget is also included.

A-1019-18T4

Complainants appealed both decisions to the Local Finance Board (LFB).[4] See N.J.S.A. 40A:9-22.7(c) (providing that the LFB shall "hear and determine any appeal of a decision made by a county or municipal ethics board"). The LFB's September 7, 2018 decision stated that it had reviewed the Board's "complete investigatory and hearing files[,]" and, in accordance with the LGEL's implementing regulations, "determined these . . . sufficiently complete to permit review without a separate evidentiary hearing[.]"

The LFB determined that Ferrara's and Borek's compensation was fixed by the township's resolution and governed by ordinance. It also found that the township "conducts annual salary evaluations for employees[] and establishes and fixes wages based upon existing salaries and comparable salaries around the area." The LFB determined Ferrara was "the lowest paid administrator in the area, despite serving in multiple capacities."[5] Critically, the LFB concluded:

> The contested employee raises were given pursuant to the municipal resolution establishing the annual salary and wages of a list of municipal employees and adopted by the Township Committee, effective January 1, 2017.

[4] We have not been provided with the actual appeals filed with the LFB.

[5] Neither transcript of proceedings before the Board contained testimony that supported this factual finding. However, we do not have copies of all that was furnished to the LFB or all items contained in the LFB's statement of items comprising the record before the agency.

[The] raises were subsequently incorporated into the municipal budget which [was] introduced and adopted by the Township Committee on May 23, 2017. McCauley was not retained for home sale listing agreements until on or about August 2017 for Ferr[a]ra and on August 11, 2017 for Borek.

The LFB also concluded that McCauley "did not secure unwarranted privileges by representing municipal employees in a one-time real estate transaction"; nor did Ferrara and Borek "secure unwarranted privileges by agreeing to a one-time real estate transaction with a[] . . . committee member subsequent to receiving routine annual salary increases as established by municipal ordinance adopted by the entire Township Committee." The LFB determined "an individual real estate transaction does not rise to the level of a matter expected to impair one's objectivity or independence of judgment for either side of the transaction."

The LFB also found there was no evidence of "a quid-pro-quo transaction." Instead, the LFB found "the substantial passage of time between the two events, coupled with the lack of evidence supporting any allegation of wrongdoing, supports the determination that they were not reciprocal events." The LFB concluded, after "having reviewed all relevant aspects of the appeals, and finding no credible evidence sufficient to support a finding of violation" of

6

the LGEL, "that [the municipal officers] did not act where they had disqualifying financial or personal involvement."

Appellant's counsel filed an objection to the LFB's decision, noting the lack of any factual findings in the Board's two resolutions, the lack of any testimony before the Board, except for "fellow members of the accused Township Committeewoman[,]" and challenged, as he did before the Board, the involvement of the Township attorney as counsel to the Board.

While not contesting the LFB's findings regarding the budget process, or that Ferrara was the lowest paid administrator in the area, appellant's counsel argued these facts were "immaterial[,]" because the budget process "and the salary reviews are all subject to the influence of the member of the Township Committee who created and voted upon the ordinance and reviewed the salary data, not some immutable process beyond the influence of . . . McCauley." Counsel argued appellants never asserted there was a "quid pro quo or reciprocal exchange between the accused officials[,]" concepts which "ha[d] nothing to do with the ethics violations alleged[.]" He requested the matter be transferred to the Office of Administrative Law (OAL) for a formal hearing.

A-1019-18T4

The LFB denied the request. Again citing the LGEL's implementing regulations, the LFB "deemed the record [before the Board] as sufficiently complete and rendered a [f]inal [a]gency [d]ecision solely on the record below."

Appellants filed this appeal challenging the LFB's decision. The LFB moved to dismiss the appeal, and the Board moved for summary disposition; both argued that appellants lacked standing. Our colleagues denied the motions.

As best we can discern, appellants argue the undisputed facts demonstrate that McCauley, Ferrara and Borek violated N.J.S.A. 40A:9-22.5(a), (c), (d) and (e).[6] Appellants' essential claim is that the LFB erred as a matter of law, because the LGEL does not require proof of a quid pro quo agreement, or that a public official actually received or bestowed a disqualifying benefit upon another. Rather, as the Court has said, only that "the public perceives a conflict between the private interests and the public duties of a government officer or employee[.]" Grabowsky v. Twp of Montclair, 221 N.J. 536, 553 (2015) (quoting N.J.S.A. 40A:9-22.2 (c)).

---

[6] The complaints before the Board also alleged violations of subsection (f). However, appellants make no substantive argument regarding this subsection in their brief. "An issue not briefed on appeal is deemed waived." Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011).

A-1019-18T4

The LFB and the Board make two arguments in opposition. First, they contend appellants failed to demonstrate the final agency decision was arbitrary, capricious and unreasonable, or lacked fair support in the record. Second, both reassert the argument that appellants lack standing to challenge the LFB's decision. In their reply brief, appellants counter the lack of standing argument.

After considering the contentions raised by all parties, we conclude that appellants have standing to appeal from the LFB's final agency decision. However, we also conclude the LFB's decision was not a mistaken application of the law to the essentially undisputed facts presented, and, therefore, we affirm.

I.

As a general rule, "appeals may be taken to the Appellate Division as of right . . . to review final decisions or actions of any state administrative agency or officer[.]" R. 2:2-3(a)(2). "Judicial review of administrative agency action is a matter of constitutional right in New Jersey." In re Proposed Quest Acad. Charter Sch., 216 N.J. 370, 383 (2013) (citing N.J. Const. art. VI, § 5, para. 4).

Pursuant to the LGEL, the LFB has exclusive jurisdiction to "govern and guide the conduct of local government officers or employees . . . who are not otherwise regulated by a county or municipal code of ethics[.]" N.J.S.A. 40A:9-

22.4. Complaints against local government employees and officers not regulated by a county or municipal code of ethics are adjudicated by the LFB under its exclusive jurisdiction. N.J.S.A. 40A:9-22.9. A final decision of the LFB as to these complaints "may be appealed in the same manner as any other final State agency decision." Ibid.; see, e.g., Mondsini v. Local Fin. Bd., 458 N.J. Super. 290 (App. Div. 2019) (reviewing decision of LFB regarding alleged violation of LGEL by executive director of regional sewerage authority).

The LFB also has exclusive jurisdiction over an appeal from the decision of a municipal ethics board. N.J.S.A. 40A:9-22.7(c). Pursuant to the LGEL's implementing regulations, both the "complainant or the local government employee or officer, who is the subject of the complaint," may appeal from the decision of a municipal board. N.J.A.C. 5:35-1.4(a) (emphasis added). Upon receipt of the written complaint by the LFB, the municipal board "shall transmit to the [LFB] the board's complete file in the matter, which shall include any transcripts or tapes of the hearing, and a copy of the municipal or county code of ethics." N.J.A.C. 5:35-1.4(c). The LFB may transmit the appeal to the OAL, or, "[i]f the record below is deemed sufficiently complete . . . [it] may consider the matter solely on the record below." N.J.A.C. 5:35-1.4(d) and (e). The LFB

must provide the complainant, the local government employee or officer and the municipal ethics board with its final decision.  N.J.A.C. 5:35-1.4(g).

Unlike decisions from complaints brought directly to the LFB because the "local government officer[] or employee[] . . . [is] not . . . regulated by a county or municipal code of ethics[,]" N.J.S.A. 40A:9-22.4, which are appealable as of right, N.J.S.A. 40A:9-22.9, the LGEL is silent as to whether the LFB's final decision from an appeal of a municipal ethics board's decision is similarly appealable as of right.  During argument before us, counsel for the LFB conceded that a local government officer or employee found by the LFB on appeal from a municipal board's decision to have violated the LGEL would have standing to appeal to this court, because he or she would have been aggrieved by the LFB's decision.  See, e.g., Price v. Hudson Heights Dev., LLC, 417 N.J. Super. 462, 466 (App. Div. 2011) (collecting cases supporting the principle that only one aggrieved by the court's judgment may appeal).  According to the LFB and the Board, appellants, indeed all unsuccessful complainants before the LFB, may not appeal because they are not aggrieved by the LFB's final agency decision.  We disagree.

"New Jersey takes 'a liberal approach to standing to seek review of administrative actions.'"  In re Issuance of Access Conforming Lot Permit No.

11                                                    A-1019-18T4

A-17-N-N040-2007, 417 N.J. Super. 115, 126 (App. Div. 2010) (quoting In re Camden Cty., 170 N.J. 439, 448 (2002)). "[S]tanding to seek judicial review of an administrative agency's final action or decision is available to the direct parties to that administrative action as well as any[]one who is affected or aggrieved in fact by that decision." N.J. Election Law Enf't Comm'n v. DiVincenzo, 451 N.J. Super. 554, 563–64 (App. Div. 2017) (emphasis added) (quoting In re Camden Cty., 170 N.J. at 446). Standing may even be extended to third-parties if they "present a sufficient stake in the outcome of the litigation, a real adverseness with respect to the subject matter, and a substantial likelihood that the party will suffer harm in the event of an unfavorable decision." In re Camden Cty., 170 N.J. at 449 (citing N.J. State Chamber of Commerce v. N.J. Election Law Enf't Comm'n, 82 N.J. 57, 67–69 (1980)).

The Board and the LFB rely upon one of our unpublished decisions, which is not binding precedent. See Rule 1:36-3.[7] They also rely upon our decision in Marques v. N.J. State Bd. of Med. Exam'rs, 264 N.J. Super. 416 (App. Div. 1993). That case is factually and legally distinguishable.

---

[7] It is also unclear from our unpublished opinion whether the complainant-appellant in that case was a resident of the involved municipality.

In Marques, after the appellant made a complaint to the State Board of Medical Examiners against two doctors, and the Board's investigation found no reason to take any action, he filed an appeal. Id. at 417–18. We noted the Board's authority to investigate such complaints was "entirely discretionary[,]" and there was "no statutory or regulatory requirement which either mandates an investigation be conducted or an investigatory record be made, maintained or kept." Id. at 418 (quoting Beck v. Bluestein, 194 N.J. Super. 247, 258 (App. Div. 1984)). While Marques' "right to bring his complaint to the attention of the Board [was] clear[,]" it did "not carry with it a right to judicial review of the Board's response[.]" Ibid. We said, "Appellant [was] neither a party to any proceeding before the Board nor an individual who has been affected adversely by its action (or non-action)." Ibid. (emphasis added). We dismissed the appeal. Ibid.

As the Court said long ago in Elizabeth Fed. Sav. & Loan Ass'n v. Howell,

> [The] right to seek judicial review of administrative decisions inheres not only in those who are direct parties to the initial proceedings before an administrative agency . . . but also belongs to all persons who are directly affected by and aggrieved as a result of the particular action sought to be brought before the courts for review.
>
> [24 N.J. 488, 499–500 (1957) (emphasis added).]

A-1019-18T4

Here, appellants been parties at every stage of the proceedings before the Board and the LFB, and they are residents of the Township. As such, they have a sufficient stake in the outcome of their complaints, and, hence, standing to challenge the LFB's decision. Unlike the statutory and regulatory scheme at play in Marques, the Legislature expressly declared it was enacting the LGEL in recognition of the government's "duty . . . to provide their citizens with standards by which they may determine whether public duties are being faithfully performed," and "to provide a method of assuring that standards of ethical conduct . . . for local government officers and employees shall be clear, consistent, uniform in their application, and enforceable on a Statewide basis[.]" N.J.S.A. 40A:9-22.2 (d) and (e) (emphasis added). The obvious public interest that undergirds the LGEL only enhances appellants' standing to challenge the LFB's final decision. See, e.g., In re Grant of Charter to Merit Preparatory Charter Sch. of Newark, 435 N.J. Super. 273, 279 (App. Div. 2014) ("[W]hen an issue involves a 'great public interest, any slight additional private interest will be sufficient to afford standing.'" (quoting Salorio v. Glaser, 82 N.J. 482, 491 (1980))).

We conclude appellants have standing to file this appeal challenging the LFB's final agency decision. We now consider the merits of the appeal.

## II.

Well known standards guide our review. "An agency's quasi-judicial decision is not disturbed on appellate review 'unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" US Masters Residential Prop. (USA) Fund v. N.J. Dep't of Envtl. Prot. -Fin. Servs., 239 N.J. 145, 160 (2019) (quoting Allstars Auto Grp, Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018)). "In undertaking this review, deference is given to the special competence and expertise of an administrative agency, such as the [LFB], with regard to technical matters with which that agency is concerned." Abraham v. Twp of Teaneck Ethics Bd., 349 N.J. Super. 374, 379 (App. Div. 2002) (citing N. J. Bell Tel. Co. v. State Dep't of Pub. Utils., Bd. of Pub. Util. Comm'rs, 162 N.J. Super. 60, 77 (App. Div. 1978)). "Moreover, '[a] reviewing court "may not substitute its own judgment for the agency's, even though the court might have reached a different result."'" Allstars Auto Grp., 234 N.J. at 158 (alteration in original) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).

Appellants argue that McCauley, Ferrara and Borek violated the following provisions of the LGEL:

> a. No local government officer or employee or member of his immediate family shall have an interest in a

business organization or engage in any business, transaction, or professional activity, which is in substantial conflict with the proper discharge of his duties in the public interest;

. . . .

c. No local government officer or employee shall use or attempt to use his official position to secure unwarranted privileges or advantages for himself or others;

d. No local government officer or employee shall act in his official capacity in any matter where he, a member of his immediate family, or a business organization in which he has an interest, has a direct or indirect financial or personal involvement that might reasonably be expected to impair his objectivity or independence of judgment;

e. No local government officer or employee shall undertake any employment or service, whether compensated or not, which might reasonably be expected to prejudice his independence of judgment in the exercise of his official duties[.]

[N.J.S.A. 40A:9-22.5 (a), (c), (d) and (e).]

These provisions are part of the "statutory code of ethics" enacted by the Legislature to further the LGEL's purposes. Mondsini, 458 N.J. Super. at 299 (quoting Dep't of Cmty. Affairs, Local Fin. Bd. v. Cook, 282 N.J. Super. 207, 209 (App. Div. 1995)).

16

We have acknowledged that as to subsections (d) and (e), the Legislature was clearly focused on "the importance of public perception" of a local official's conflicted loyalties rather than whether an actual conflict of interest existed. Id. at 300. However, contrary to appellants' argument, as to subsection (c), the public official must have acted with the specific intent to secure an unwarranted privilege for himself or another. Id. at 305. Although for reasons that follow we need not define the exact contours of prohibited conduct defined by subsection (a), by its express terms, a public official violates the provision only if he or she has a business interest in "substantial conflict with the proper discharge of his (or her) duties in the public interest[.]" N.J.S.A. 40A:9-22.5(a). In other words, an actual, not perceived, conflict.

"[A] longstanding and essential premise of our jurisprudence that predates enactment of the LGEL, [is] that in the area of ethical concerns, evaluation of any public official's actions 'must be carefully evaluated based on the circumstances of the specific case.'" Mondsini, 458 N.J. Super. at 307 (quoting Grabowsky, 221 N.J. at 554). Here, the only official actions by a local government official or employee that appellants challenge are those McCauley engaged in as part of the budget process during the early months of 2017, culminating in the May 2017 committee resolutions adopting the actual salary

increases for every non-union municipal employee, including Ferrara and Borek, and the contemporaneous adoption of the municipal budget. Those actions occurred months before Ferrara and Borek decided to list their homes for sale.

Appellants have repeatedly stressed that the LFB misconstrued the law and that they never asserted the listings were a quid pro quo for McCauley's votes enacting the raises. It would seem, therefore, that at the time of McCauley's official actions, appellants acknowledge her real estate practice was not implicated. In short, there was no evidence McCauley violated subsection (a) or (c) of the statute, because McCauley's real estate practice did not present a substantial conflict with her official duties at the time, nor did she act with the specific intent to bestow an <u>unwarranted benefit</u> upon herself or Ferrara or Borek. As the Court recognized in the pre-LGEL case of <u>Wyzykowski v. Rizas</u>, "[t]here cannot be a conflict of interest where there do not exist, realistically, contradictory desires tugging the official in opposite directions.'" 132 N.J. 509, 524 (1993) (alteration in original) (quoting <u>La Rue v. Twp. of E. Brunswick</u>, 68 N.J. Super. 435, 448 (App. Div. 1961)).

As to a possible perceived conflict of interest, N.J.S.A. 40A:9-22.5(d) and (e), "[t]he question will always be whether the circumstances could reasonably be interpreted to show that they had the likely capacity to tempt the official to

depart from his sworn public duty." Id. at 523 (quoting Van Itallie v. Borough of Franklin Lakes, 28 N.J. 258, 268 (1958)). We agree with the LFB that Ferrara's and Borek's decision to list their homes for sale with McCauley months after the budget vote could not reasonably be perceived as having "tempted" her to vote for their raises. In considering actual and perceived conflicts regarding public officers and employees, "the Court made clear: 'The [LGEL] must be applied with caution, as "[l]ocal governments would be seriously handicapped if every possible interest, no matter how remote and speculative, would serve as a disqualification of an official."'" Mondsini, 458 N.J. Super. at 307 (alterations in original) (quoting Grabowsky, 221 N.J. at 554).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1019-18T4