677 A.2d 195

THE HOME NEWS, APPELLANT, v. STATE OF NEW JERSEY, DEPARTMENT OF HEALTH AND NEW JERSEY STATE REGISTRAR, RESPONDENTS.

Argued February 13, 1996—Decided June 17, 1996.

*Thomas J. Cafferty* argued the cause for appellant (*McGimpsey & Cafferty*, attorneys; *Mr. Cafferty* and *Arlene M. Turinchak*, on the briefs).

*Mary C. Jacobson*, Assistant Attorney General, argued the cause for respondents (*Deborah T. Poritz*, Attorney General of New Jersey, attorney; *Ms. Jacobson* and *Michael J. Haas*, Senior Deputy Attorney General, of counsel; *Ms. Jacobson* and *Patricia De Cotiis* and *Donald M. Palombi*, Deputy Attorneys General, on the briefs).

The opinion of the Court was delivered by

STEIN, J.

This appeal requires the Court to determine whether the Right-to-Know Law, *N.J.S.A.* 47:1A–1 to –4, or the common-law right to inspect public documents entitle petitioner to receive cause-of-death information on a death certificate. Respondent Department of Health adopted a regulation, *N.J.A.C.* 8:2A–1.2, that bars the release of such information in all but a limited number of cases. The Appellate Division upheld the regulation and ruled that petitioner was precluded from receiving the cause-of-death information. We granted certification, 142 *N.J.* 571, 667 *A.*2d 189 (1995), and now reverse.

I

In 1991, five-year-old Timothy Wiltsey disappeared from a fairground in Sayreville. An intensive investigation followed and the apparent tragedy generated significant public interest and media coverage. Sadly, Timothy's body was found months later in a drainage area in Edison Township.

In February 1994, petitioner, The Home News (Home News), a daily newspaper with circulation in the central region of the state, requested a copy of the boy's death certificate from the Registrar of Vital Statistics of Edison (Registrar). *N.J.S.A.* 26:8–62 requires that state registrars or other custodians of vital records

supply certified copies of records, including records of deaths, to "any applicant." However, *N.J.A.C.* 8:2A–1.2, which became effective in December 1993, provides that information concerning the cause of death shall be omitted from death certificates unless the applicant is on a short list of persons that includes the decedent's executor, surviving spouse or parent, or one who receives the consent of one of the listed persons, or when the applicant seeks the information for research or public-health purposes.

The regulation was promulgated to effectuate the confidentiality provisions of the Cancer Registry Act, *N.J.S.A.* 26:2–107, the Acquired Immune Deficiency Syndrome (AIDS) Assistance Act, *N.J.S.A.* 26:5C–7 to –13, and the Registration of Vital Statistics Act, *N.J.S.A.* 26:8–40.22 to –40.23. 25 *N.J.Reg.* 3115(a) (July 19, 1993) (summarizing proposed regulation). The AIDS Assistance Act and the Cancer Registry Act require that cases of those diseases be reported to the Department of Health for purposes of research and coordination of treatment programs. *See N.J.S.A.* 26:5C–2; *N.J.S.A.* 26:2–104. Sections 40.20 to 40.26 of the Registration of Vital Statistics Act establish the same procedures for birth defects. *N.J.S.A.* 26:8–40.20 to –40.26. Each of those statutes requires that "personal and sensitive medical information" be kept confidential. 25 *N.J. Reg.* 3115(a). By limiting disclosure of cause-of-death information on death certificates, the regulation protects the privacy of those persons who die of AIDS, cancer, or birth defects. As an additional source of authority for withholding cause-of-death information, the respondent cites Executive Order Number 9 exempting from the Right–to–Know Law "[r]ecords concerning morbidity, mortality and reportable diseases of named persons required to be made, maintained or kept by any State or local governmental agency." *Exec. Order No. 9,* § 3(c), 1963 *N.J. Laws* 1153, 1157 (Sept. 30, 1963).

Because Home News was not one of the persons permitted by the regulation to receive the information, the Registrar provided only a partial copy of the death certificate, omitting the information concerning the cause of death. Home News commenced this

action by way of a complaint and order to show cause pursuant to the Right–to–Know Law, *N.J.S.A.* 47:1A–1 to –4, and the common-law right to inspect public documents. The complaint seeks a declaratory judgment setting aside the regulation and compelling the disclosure of the complete death certificate. The matter was transferred to the Appellate Division pursuant to *Rule* 2:2–3(a)(2) (governing appeal from final decision of administrative officer).

In an unreported opinion, the Appellate Division upheld the regulation and dismissed the complaint. The court held that the regulation was a proper exercise of the Department of Health's authority under *N.J.S.A.* 26:8–23, which permits the Department to promulgate regulations necessary to enforce the laws relating to vital statistics. The court determined that the regulation achieved a compromise between the statutory duty to furnish copies of death certificates and the imperative of the AIDS Assistance Act to protect the confidentiality of AIDS sufferers, noting that in that Act the Legislature "enunciated . . . a compelling public interest to exclude cause-of-death information from the [Right–to–Know Law]." Although recognizing the "clear potential [that] Timothy Wiltsey's death may not have been AIDS-related," the court concluded that withholding the cause of death in *all* cases was a reasonable exercise of rulemaking authority because, if the cause of death were excluded only in AIDS cases, the recipient of a death certificate that omitted the cause of death would be able to deduce that the decedent had died of AIDS. Thus, in addition to the primary purpose of preventing direct disclosure of the cause of death of AIDS victims, the Appellate Division discerned a secondary, prophylactic interest that justified blanket non-disclosure.

The Appellate Division disposed of Home News's argument based on the common-law right of access to public documents without extended discussion, holding that "even the interest of a newspaper must yield to the strong public policy for confidentiality identified in the AIDS [Assistance] Act."

## II

Only last term this Court restated the legal principles that govern the public's common-law and statutory rights of access to public records. *See Southern New Jersey Newspapers, Inc. v. Township of Mt. Laurel,* 141 *N.J.* 56, 660 *A.*2d 1173 (1995); *Higg–A–Rella, Inc. v. County of Essex,* 141 *N.J.* 35, 660 *A.*2d 1163 (1995). We need not revisit this area of the law in detail to resolve the question posed by this record.

■ Under the Right–to–Know Law, New Jersey citizens have an absolute right to inspect, copy, or purchase records "required by law to be made, maintained or kept on file" by public officials. *N.J.S.A.* 47:1A–2; *see Higg–A–Rella, supra,* 141 *N.J.* at 43, 660 *A.*2d 1163. Death certificates constitute "Right–to–Know" records. *See Home News Publishing Co. v. State,* 239 *N.J.Super.* 172, 180, 570 *A.*2d 1267 (App.Div.1990). The statute provides, however, that certain records may be exempted from disclosure by various means, including legislation, order of the Governor, or regulation, *N.J.S.A.* 47:1A–2, although this power must be exercised with discretion and only to the extent "necessary for the protection of the public interest." *Irval Realty Inc. v. Board of Pub. Util. Comm'rs,* 61 *N.J.* 366, 374, 294 *A.*2d 425 (1972). Because of our disposition of this case under the common-law right of access to public documents, we do not determine whether the regulation is entirely consistent with the authorizing statutes and properly exempts all cause-of-death information from the Right–to–Know Law.

■ The common-law right to inspect documents extends to a wider pool of public records than does the Right–to–Know Law, but the right itself is a qualified one. *Atlantic City Convention Ctr. Auth. v. South Jersey Publishing Co.,* 135 *N.J.* 53, 60, 637 *A.*2d 1261 (1994). A written memorial "made by public officers in the exercise of public functions" will constitute a common-law public record, *Nero v. Hyland,* 76 *N.J.* 213, 222, 386 *A.*2d 846 (1978), and death certificates incontestably fall within that catego-

ry. Unlike the statutory right, however, there is a threshold standing requirement that the applicant have an interest in the subject matter of the material sought. *Southern New Jersey Newspapers, supra,* 141 *N.J.* at 71, 660 *A.*2d 1173. Moreover, the applicant must establish that the balance of its interest in disclosure against the public interest in maintaining confidentiality weighs in favor of disclosure. *Id.* at 72, 660 *A.*2d 1173.

To satisfy the standing requirement, the applicant's interest need not be personal; thus, a citizen's concern about a public problem is a sufficient interest for purposes of standing. *Id.* at 71, 660 *A.*2d 1173; *Irval Realty, supra,* 61 *N.J.* at 372, 294 *A.*2d 425. The press's role as "the eyes and ears of the public" generally is sufficient to confer standing on a newspaper that seeks access to public documents. *South Jersey Publishing Co. v. New Jersey Expressway Auth.,* 124 *N.J.* 478, 496–97, 591 *A.*2d 921 (1991); *see Southern New Jersey, supra,* 141 *N.J.* at 71, 660 *A.*2d 1173. Indeed, a legitimate, private profit motive is also sufficient. *Higg–A–Rella, supra,* 141 *N.J.* at 47, 660 *A.*2d 1163. As a commercial entity, newspapers regularly pursue and print stories based on their potential public interest and appeal, as contrasted with news stories that inherently serve the public interest; the newsworthiness and commercial value of such stories clearly suffice to confer standing on a newspaper under the common-law right of access.

In the next step of the analysis, the applicant's interest in the public record in question is balanced against the public's interest in maintaining confidentiality. In that context, the applicant's interest is more closely scrutinized, and the courts will consider whether it is " 'premised upon a purpose which tends to advance or further a wholesome public interest or a legitimate private interest.' " *Loigman v. Kimmelman,* 102 *N.J.* 98, 112, 505 *A.*2d 958 (1986) (quoting *City of St. Matthews v. Voice of St. Matthews, Inc.,* 519 *S.W.*2d 811, 815 (Ky.1974)). Thus, where substantial justification exists for maintaining confidentiality, considerably more than standing and good faith on the part of the

applicant is required before disclosure is warranted. *Id.* at 108, 505 *A.2d* 958. On the other hand, we have held that

[a]s the considerations justifying confidentiality become less relevant, a party asserting a need for the material will have a lesser burden in showing justification. If the reasons for maintaining confidentiality do not apply at all in a given situation, or apply only to an insignificant degree, the party seeking disclosure should not be required to demonstrate a compelling need.

[*McClain v. College Hosp.*, 99 *N.J.* 346, 362, 492 *A.2d* 991 (1985).]

*See also Loigman, supra,* 102 *N.J.* at 105, 505 *A.2d* 958 (holding that where interest in confidentiality is "slight or non-existent," standing will be sufficient to require disclosure, but when confidentiality interest is greater, "the citizen's right of access is qualified").

The existence of a regulation is not dispositive of whether there is a common-law right to inspect a public record, but it weighs "very heavily" in the balancing process as a determination by the Executive Branch of the importance of confidentiality. *Southern New Jersey Newspapers, supra,* 141 *N.J.* at 76, 660 *A.2d* 1173. In the context of the Right–to–Know Law, such regulatory exemptions preempt the balancing of the interests and preserve confidentiality on a categorical basis. *See McClain, supra,* 99 *N.J.* at 356, 492 *A.2d* 991 (discussing statutory exemptions). That approach is not appropriate under the common law, where "the focus must always be on 'the character of the materials sought to be disclosed.'" *Loigman, supra,* 102 *N.J.* at 112, 505 *A.2d* 958 (quoting *State v. Doliner,* 96 *N.J.* 236, 248, 475 *A.2d* 552 (1984)); *see also Atlantic City, supra,* 135 *N.J.* at 60, 637 *A.2d* 1261 (holding that "court must engage in a balancing process 'concretely focused upon the relative interests of the parties in relation to [the] specific materials'") (quoting *McClain, supra,* 99 *N.J.* at 361, 492 *A.2d* 991). Above all, the process is flexible, and "sensitive to the fact that the requirements of confidentiality are greater in some situations than in others." *McClain, supra,* 99 *N.J.* at 362, 492 *A.2d* 991.

### III

█ We believe that in considering Home News's qualified, common-law right of access to public documents, the Appellate Division erred in holding that Home News's interest in the cause-of-death information on Timothy Wiltsey's death certificate "must yield to the strong public policy for confidentiality identified in the AIDS [Assistance] Act." The court did not take into account the circumstances of the information request at issue here, and its ruling would apparently bar disclosure of cause-of-death information in all cases. That type of blanket prohibition is not consistent with the balancing approach mandated by the common law.

█ We do not diminish the importance of preserving the confidentiality of sensitive medical information. Relieving AIDS, cancer, and birth-defects sufferers and their survivors from the fear of a post-mortem loss of privacy concerning sensitive medical information is an interest of the highest order. The regulation's secondary, prophylactic purpose of preventing the identification of persons who died of AIDS by barring access to cause-of-death information on *all* death certificates is also valid and entitled to weight in the common-law balancing process. Even the more general privacy interest in protecting cause-of-death information identified in Executive Order Number 9 should be considered, notwithstanding the fact that the Executive Order's effect is limited to the Right–to–Know statute. *Exec. Order No. 9, supra,* § 4, 1963 *N.J. Laws* at 1157.

But whatever the cause of Timothy Wiltsey's death may have been, there is no suggestion in this record that the cause of his death was AIDS, cancer, a birth defect, or any other confidential medical condition that might be the focus of the policy underlying the regulation. On the contrary, the likely inference from the record is that he was the victim of a homicide, a subject of conceded public interest. Indeed, counsel for Home News represented at oral argument that the prosecutor investigating the Wiltsey case had made public statements confirming that fact. Permitting disclosure in this case, where neither AIDS nor any

other sensitive medical condition is implicated, will not jeopardize the primary confidentiality interests identified in the applicable statutes and in the regulation.

Nor will disclosure jeopardize the secondary purpose of the regulation, which is to deny cause-of-death information in *all* cases in order to preclude the inference that only persons whose death certificates lack cause-of-death information died of AIDS or another confidential medical condition. Because disclosure in this case would be based on the exceptional showing of a newspaper's common-law right of access that outweighs the regulatory interest in confidentiality, in a context involving no suggestion of a confidential medical condition, revelation of the cause of death does not intrude on the regulatory policy of general non-disclosure in order to protect the isolated cases in which non-disclosure is mandatory. Persons interested in the grounds for an exception from the regulation readily will understand that neither the regulation's primary nor secondary purpose is implicated here, and that the exception is based solely on the newspaper's overriding right of access to the cause-of-death information under circumstances that do not threaten the achievement of the regulation's goals.

Favoring disclosure to the press is the public's interest in the Wiltsey case. We do not imply that Home News's motive for obtaining the cause-of-death information possesses the same socially important attributes often associated with the term "public interest." Unlike *Shuttleworth v. City of Camden*, 258 *N.J.Super.* 573, 577, 610 *A.*2d 903 (App.Div.), *certif. denied*, 133 *N.J.* 429, 627 *A.*2d 1135 (1992), where the press sought information concerning a suspect who died in police custody, or *Red Bank Register, Inc. v. Board of Educ.*, 206 *N.J.Super.* 1, 5, 501 *A.*2d 985 (App.Div.1985), where the press·sought evidence of mismanagement by school officials, here Home News appears chiefly interested in satisfying the more mundane curiosity of its readers for the details of a tragedy.

However, as we said in *McClain*, the interest in a public record need not be compelling to justify disclosure when the

rationale for maintaining confidentiality does not apply or applies in only an insignificant degree. *See supra*, 99 *N.J.* at 362, 492 *A.*2d 991. The public's interest in the story is undeniable. Home News has a legitimate business interest in the information it seeks. The purposes of preventing disclosure of sensitive medical information will not be thwarted by disclosure of the cause-of-death information in this case. Nor will allowing a narrow exception to the blanket prohibition on disclosure defeat the secondary, prophylactic purpose of the regulation. Only in the unusual case will a request for cause-of-death information weigh so clearly in favor of disclosure as do the facts presented here.

We hold that Home News's interest in receiving the cause-of-death information outweighs the importance of preserving the confidentiality of the death certificate it seeks, and that the complete death certificate must be disclosed.

IV

We reverse the judgment of the Appellate Division and remand the matter to the New Jersey State Registrar of Vital Statistics for further action consistent with this opinion.

WILENTZ, C.J., and HANDLER, POLLOCK, O'HERN, GARIBALDI and COLEMAN, JJ., join in Justice STEIN's opinion.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.