931 A.2d 610

CAROLYN AMM AUSLEY, PLAINTIFF–RESPONDENT v. COUNTY OF MIDDLESEX; COUNTY OF MIDDLESEX MEDICAL EXAMINER'S OFFICE; DR. FREDERICK DICARLO; DEBY BATH, CANDACE BOEHLER, DEFENDANTS, AND RAYMOND J. SAUTER, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 10, 2007—Decided September 24, 2007.

46 

Before Judges WEISSBARD, S.L. REISNER and BAXTER.

*Wilentz, Goldman & Spitzer,* attorneys for appellant (*Russell J. Fishkind,* of counsel; *Linda Lashbrook,* on the brief).

*Thomas Hugh Martin,* attorney for respondent.

The opinion of the court was delivered by

S.L. REISNER, J.A.D.

Defendant Raymond Sauter (defendant or Sauter) appeals from a December 14, 2006 trial court order, granting plaintiff Carolyn Amm Ausley's application authorizing the release to Ausley's medical expert of laboratory specimens taken in connection with the autopsy of decedent Joyce Sauter. The county medical examiner, named as a defendant in the trial court, did not object to entry of the order and has not appealed from it. We affirm.

I

This case is a dispute between decedent's sister and decedent's husband. Although decedent had terminal cancer, plaintiff expressed continuing concerns as to the level of care decedent received just prior to her death and whether that care may have hastened her death. To that end, although an autopsy performed by the county medical examiner revealed no evidence of over-medication or foul play of any kind, plaintiff retained her own medical expert and sought access to tissue and vitreous specimens

taken in connection with the autopsy in order to perform her own investigation. The county counsel advised plaintiff that the specimens were not public records for purposes of the Open Public Records Act (OPRA), *N.J.S.A.* 47:1A–1.1, and pursuant to its standard practice, the county medical examiner declined to produce the specimens without a court order.

Accordingly, plaintiff initiated this action by filing a verified complaint and order to show cause (OSC). The OSC, which was entered on September 21, 2006, by its terms included temporary injunctive relief ordering the county medical examiner to preserve the specimens pending further court order. The OSC also required defendants to appear on October 25, 2006, and show cause why the specimens should not be turned over to plaintiff's expert for testing. In other words, the OSC contemplated a summary proceeding that would be decided on the return date. Sauter filed an answer to the complaint and opposition to the OSC. Decedent's daughter, also a named defendant, filed an answer indicating that she did not wish to be involved in the dispute. The county counsel filed a letter with the court indicating that neither the county nor its medical examiner objected to plaintiff's application.

In an oral opinion placed on the record on December 14, 2006, the trial judge granted the application. Analyzing the application as one for a preliminary injunction, he concluded that plaintiff's interest in obtaining closure with respect to her concerns about her sister's death outweighed defendant's interest in preventing her from obtaining the specimens.

## II

We begin by considering the procedure followed in this case, which was commenced by verified complaint and order to show cause. As we observed in *Solondz v. Kornmehl,* 317 *N.J.Super.* 16, 20, 721 *A.*2d 16 (App.Div.1998), the right to commence an action by order to show cause is limited by the Rules of Court to injunction applications, *R.* 4:52–1, and actions in which a statute, regulation or Court Rule permits the matter to be brought in a

summary manner. *R.* 4:67–1(a). Since plaintiff's first concern in this case was to preserve the status quo by preventing the medical examiner from destroying the specimens pendente lite, she properly sought that temporary injunctive relief by order to show cause. *See R.* 4:52–1.

■ However, the underlying substantive relief sought, i.e., release of the specimens, did not involve preliminary injunctive relief but rather final relief. Neither plaintiff's application to the trial court nor her appellate brief cited any legal authority for pursuing that relief in a summary proceeding, although OPRA authorizes a summary action to obtain government records. *N.J.S.A.* 47:1A–6.[1] In any event, in the circumstances of this case, we conclude that the trial judge properly granted summary relief. The parties had placed before him all of the relevant evidence, there were no material facts in dispute as to the legal issue of whether the specimens should be released to plaintiff's expert, and the evidence permitted only one resolution of that question as a matter of law. *See Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995). In fairness to the trial judge, we also note that the parties treated the application as one for preliminary injunctive relief and neither party briefed or argued the correct legal authority applicable to the complaint.

■ We next address the reasons for our conclusion on the merits, including the legal status of the specimens and plaintiff's right to obtain them. As the county counsel correctly advised plaintiff, medical specimens taken from a body during an autopsy are not included in the definition of "government records" under OPRA, *N.J.S.A.* 47:1A–1.1, except, among other situations, "for the use as a court of this State permits, by order after good cause

---

[1] OPRA requires prior notice to the county prosecutor of an application for a court order for release of medical specimens. *N.J.S.A.* 47:1A–1.1. The record does not reflect such notice. However, in response to plaintiff's previous written requests for the specimens, the prosecutor's office indicated no interest in precluding her from obtaining them and indicated that the office did not investigate decedent's death.

has been shown" upon application made on notice to the county prosecutor. *Ibid.* In other words, OPRA treats medical specimens as "records," but not as the kinds of government records that are freely available in the way OPRA records normally are. *See N.J.S.A.* 47:1A–1. Rather, medical specimens may be made available by court order under some circumstances.

■ The regulations of the State Medical Examiner further define the circumstances under which non-OPRA records may be obtained and who has standing to request them:

(c) Any other records that satisfy the common law definition of a "public record" which may exist in the medical examiner's file may be inspected or copied ... *provided the requestor is able to demonstrate that his or her particular interest outweighs the need of the agency and/or the public interest in confidentiality.* The propriety of the party's interest in these records shall be determined by the authorized county medical examiner in consultation with the State Medical Examiner whose final determination shall be binding. The next of kin of the decedent, *immediate family members,* physicians who treated the decedent for his or her last illness or injury, the decedent's legal representative, law enforcement agencies, or attorneys or insurance companies representing parties in litigation arising from the incident that caused the decedent's death *are presumed to have a proper interest in these records.*

(d) In the event that the requestor is unable to demonstrate a proper interest, the County or State Medical Examiner may advise the requestor to seek a court ordered release of records.

[*N.J.A.C.* 13:49–3.1(c) and (d) (emphasis added.)]

*See Shuttleworth v. City of Camden,* 258 *N.J.Super.* 573, 581–95, 610 *A.*2d 903 (App.Div.), *certif. denied,* 133 *N.J.* 429, 627 *A.*2d 1135 (1992) (discussing police and autopsy reports as common law records); *Home News v. Dep't of Health,* 144 *N.J.* 446, 456–58, 677 *A.*2d 195 (1996) (newspaper's common law right to obtain cause-of-death information). These regulations plainly confer standing upon a member of the deceased's immediate family. Hence plaintiff, as the decedent's sister, had standing to apply for permission to examine the specimens.

■ The regulations also define the scope of the contest in case of a dispute over the records; it is between the presumed interest of the immediate family member in obtaining the record and the "need of the agency and/or the public interest in confidentiality."

*Ibid.* The agency, in this case the county medical examiner, eschewed any interest in confidentiality and did not object to entry of an order for turnover of the specimens. We understand defendant's asserted interest in preventing plaintiff from continuing her investigation of the circumstances of her sister's death, an activity he contends is painful and offensive to other family members. However, that is not a legally cognizable interest in the context of this case.

To the extent not further addressed, plaintiff's appellate arguments are without sufficient merit to warrant discussion in a written opinion. *R.* 2:11–3(e)(1)(E). This is not a probate case. Nor does it involve an application to exhume a body. Moreover, the case does not involve a burial or an autopsy. *See N.J.S.A.* 45:27–22 (concerning the right of a spouse or other relatives to determine disposition of a decedent's remains); *N.J.S.A.* 52:17B–88.2 (giving family members the right to object to a proposed autopsy on religious grounds). The autopsy has already occurred, and decedent has been cremated in accordance with her wishes. The specimens constitute evidence which belongs to the State. Defendant did not express any interest in obtaining the specimens for burial or other ritual disposition. Nor did he express any religious objections to the State maintaining them.

Since the trial judge reached the correct result, the order on appeal is affirmed.