**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2634-22

ASIAN HATE CRIMES TASK
FORCE, a non-profit organization,

    Plaintiff-Respondent,

v.

VOORHEES TOWNSHIP,
VOORHEES POLICE
DEPARTMENT, DEE OBER,
in official capacity as records
custodian and EVERBRIDGE, INC.,

    Defendants.

_____

ASIAN HATE CRIMES TASK
FORCE, a non-profit organization,

    Plaintiff-Respondent,

v.

BOROUGH OF HADDON HEIGHTS
and KELLY SANTOSUSSO, in
official capacity as records custodian,

    Defendants.

_____

CARMINE SODORA,

       Plaintiff-Respondent,

v.

CITY OF HOBOKEN and
JAMES J. FARINA, in official
capacity as records custodian,

       Defendants-Appellants,

and

EVERBRIDGE, INC.,

       Defendant.

_____

Argued January 27, 2025 — Decided March 6, 2025

Before Judges Sabatino, Berdote Byrne, and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket Nos. L-4005-21, L-0055-22, and L-0744-22.

Alyssa Wells, Assistant Corporation Counsel, argued the cause for appellants (Brian J. Aloia, Corporation Counsel, attorney; Alyssa Wells, on the briefs).

Christina N. Stripp argued the cause for respondents Asian Hate Crimes Task Force and Carmine Sodora (Cohn Lifland Pearlman Herrmann & Knopf, LLP, attorneys; Walter M. Luers and Christina N. Stripp, on the briefs).

PER CURIAM

A-2634-22

The main focus of this appeal is a retrospective one. We must decide whether the trial court in 2022 misapplied the then-existing version of the Open Public Records Act ("OPRA"), N.J.S.A. 47:1A-1 to -13, in ordering the appellant municipality to produce citizen email addresses to the plaintiff requestor, given that the Legislature thereafter amended OPRA in 2024 to make clear that such citizen email addresses are not "government records" obtainable under the statute. We also must decide whether the trial court erred in concluding that the requestor was independently entitled to the email addresses under the common law.

Applying de novo review, we conclude the trial court erred in its application of both the pre-amended version of OPRA and the common law in ordering disclosure of the email lists.

I.

We summarize the pertinent facts and procedural background of this case[1] in limited detail, bearing in mind that our discussion is mainly about a law that has since been amended.

---

[1] We need not discuss the facts of two other lawsuits that had been consolidated with the Sodora case in the trial court, which involved similar legal issues: Asian Hate Crimes Task Force v. Voorhees Township, et al., CAM-L-4005-21 ("the Voorhees case") and Asian Hate Crimes Task Force v. Haddon Heights, et

The Parties

Plaintiff-respondent, Carmine Sodora, is a resident of Hoboken. He is a member of Hoboken for Public Schools, a watchdog organization with an asserted interest in raising awareness about taxpayer expenses.

Sodora and his organization were interested in informing the public about a referendum scheduled for January 25, 2022, in which Hoboken residents would vote on a bond issue for a new high school. To pursue that objective, Sodora sought to gain access to citizen email addresses compiled in "local news alert" email distribution lists used by defendant, the City of Hoboken. The City contracted with a third party, defendant Everbridge, Inc. (also known as "Nixle") to compile and maintain the news alert system.[2]

On January 4, 2022, Sodora submitted an OPRA request to the City seeking: (1) the citizen email distribution list used to send municipal alert emails; (2) copies of contracts and proposals between the City and the Mount Vernon Group, an architectural firm; and (3) copies of contracts and proposals

al., CAM-L-0055-22 ("the Haddon Heights case"). The Haddon Heights case settled, and no appeal was taken in the Voorhees Township case.

[2] Nixle is a subsidiary of Everbridge and the names of the two entities are used interchangeably throughout the record.

A-2634-22

between the Hoboken Board of Education and the Mount Vernon Group. Only the email distribution lists are at issue here.

The email distribution lists consist of contact information, primarily phone numbers[3] and email addresses, for citizens who subscribed via the City's website to receive news alerts. According to Nixle's Terms of Use, the alerts involve "Life Safety/Alert Notifications" and "Non-Emergency Notifications." "Life Safety/Alert Notifications" involve such things as "a severe weather event, evacuation or shelter in place notice, active shooter or similar attack, hospital code alerts, etc."

Although the sign-up portal is displayed on the City's website, it is maintained and managed by Nixle/Everbridge.[4] Nixle/Everbridge communicates the local news alerts provided by Hoboken to the subscribers. At the top of the sign-up portal is language explaining that "[t]he City of Hoboken uses the Nixle messaging system to send news updates, event information, and other information to residents." More importantly for purposes of this case, the sign-up portal assures citizens that "[y]our information is not shared with the

---

[3] Access to the phone numbers is not at issue in this appeal.

[4] In the other two similar matters consolidated for trial, involving Voorhees and Haddon Heights, the subscribers instead enrolled through the third-party website, not that of the municipality.

A-2634-22

City of Hoboken."

Given that the email lists are maintained by Nixle/Everbridge, and not by the City, the City denied Sodora's OPRA request. It advised Sodora that it found "no responsive records exist[ed] in the department."

The Complaint

On January 10, 2022, Sodora filed in the Law Division a Verified Complaint and Order to Show Cause against the City and its records custodian.[5] The complaint pled two counts, respectively alleging: (1) defendants violated OPRA by failing to provide Sodora with email addresses of the citizen subscribers to the local news alert system; and (2) defendants violated his common law right to access what he contended to be public documents.

In responding to the Order to Show Cause, the City explained its denial of plaintiff's access requests, as follows:

> Emails are entered one at a time into the Nixle system, and it is not possible through the Nixle system to generate a list of all emails that have been entered. The City does not separately make, maintain, or keep on file a list of e-mail addresses that have been entered into the Nixle system. Therefore, the City does not have any documents or records that may be potentially responsive to [plaintiff's] request for "distribution lists."

---

[5]  For simplicity, we refer to the arguments of the City and its codefendant records custodian as those of "the City."

The City further asserted that its citizens' rights to privacy rendered the email addresses non-disclosable.

The trial court granted the Order to Show Cause and allowed the litigation to proceed. In its answer to the complaint, the City denied the allegations and again asserted the City "does not maintain a list of the e-mail addresses for those residents who sign up for Nixle Alerts." Thereafter, the trial court consolidated this matter with nearly identical complaints that had been filed by Asian Hate Crimes Task Force in the Camden vicinage against Voorhees Township, Haddon Heights, Everbridge, and municipal officials. Sodora's case was transferred to the Camden vicinage to be heard in tandem with the other two cases.

Everbridge, meanwhile, argued that the documents sought in the cases were not "government records" subject to OPRA, that the lists were its proprietary information exempt under OPRA, and that the public's interest in non-disclosure outweighed plaintiffs' interest in disclosure.

After hearing oral argument, the trial court issued a consolidated and comprehensive written decision on May 26, 2022 in favor of plaintiffs, finding that in all three cases the subscriber lists were government records; the privacy exception to OPRA did not apply to citizen email addresses or personal phone numbers; and that OPRA extended to personal information provided by

A-2634-22

individuals to a private entity when they sign up for a third-party service that provides governmental alerts. The trial court gave the parties the opportunity to brief the issue of counsel fees, and further oral argument was scheduled on the fee-shifting issue. The court's opinion was followed by an order that granted the plaintiff's requested relief of disclosure and did not restrict plaintiffs' use of the documents in any manner.

The City defendants and Everbridge moved for reconsideration, which the court denied on the papers.

After oral argument on the issue of counsel fees, the court issued an order on March 28, 2023, which approved a reduced fee award, finding the municipal parties were responsible for a portion of the fees associated with their specific matter. The City's portion totaled $16,526.80.

The City filed the present appeal. Although it initially filed a cross-appeal, Haddon Heights withdrew it after entering into a settlement. Everbridge has not appealed or cross-appealed. As noted above, nor has Voorhees Township.

With the consent of the parties, the trial court entered an order staying disclosure and the payment of counsel fees pending this appeal.

The 2024 Amendments to OPRA

While this appeal was pending, on June 5, 2024, OPRA was amended when Governor Phil Murphy signed S. 2930 (2024), mandating that agencies comply with its new provisions by September 3, 2024. Of particular relevance here, the amendments clarified that personal email addresses provided to receive a government service, and those provided to receive official notifications, are confidential and not disclosable under OPRA. N.J.S.A. 47:1A-1 and -1.1 (as amended).

The critical portion of the 2024 amendments to OPRA states, in pertinent part:

> A government record shall not include the following information which is deemed to be confidential for the purposes of P.L.1963, c. 73 (C.47:1A-1 et seq.) as amended and supplemented:
>
> . . . .
>
> that portion of any document which discloses . . . any personal email address required by a public agency for government applications, services, or programs[;]
>
> . . . .
>
> that portion of any document that discloses the personal identifying information of any person provided to a public agency for the sole purpose of receiving official notifications[.]

9                                            A-2634-22

[N.J.S.A. 47:1A-1.1 (emphasis added).]

Following this enactment, we invited the parties to submit supplemental briefs addressing the significance of the amendments to our review of the trial court's 2022 ruling, and related issues of retroactivity and mootness. We have considered those helpful additional submissions.

## II.

We examine the legal issues presented on this appeal through a de novo standard of review. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."). Case law has applied this general de novo principle to appeals involving the applicability and interpretation of OPRA. See, e.g., Paff v. New Jersey State Firemen's Ass'n, 431 N.J. Super. 278, 286 (App. Div. 2013); K.L. v. Evesham Twp. Bd. of Educ., 423 N.J. Super. 337, 349 (App. Div. 2011).

## A.

A threshold question is whether the 2024 OPRA amendments apply retroactively to the trial court's decision rendered in 2022, and, if so, whether they moot the parties' dispute. We agree with plaintiff that the amendments do not retroactively affect the statutory analysis, and that the case is not moot.

In deciding whether to retroactively apply a statutory provision or amendment, courts generally consider "whether the Legislature intended to give the provision retroactive application." James v. N.J. Mfrs. Ins. Co., 216 N.J. 552, 563 (2014). Here, there is no such manifest legislative intent.

The Legislature expressly provided that the OPRA amendments at issue here were to go into effect "90 days following the date of enactment." S. 2930 § 12 (2024). They did not take effect until September 3, 2024, after the date of the City's alleged OPRA violation.

Significantly, as pointed out by Sodora, the Legislature removed retroactive application language from the final version of the amendments. The bill had contained proposed language that provided the amendments "shall apply retroactively to all complaints and appeals pending before the Government Records Council, the Superior Court or the Supreme Court of New Jersey filed prior to the effective date." S. 2930 § 9 (as introduced March 4, 2024). This language does not appear in the final adopted version, which is indicative of legislative intent for purely prospective application of the amendments.

We decline to apply the amendments retroactively under the statutory exception in N.J.S.A. 47:1A-5 for situations of "emergent need." No such emergent need has been demonstrated. Although the amendments were arguably

"curative" in nature to address similar requests for citizen email addresses in other cases (as exemplified by the two companion cases in the trial court), the curative exception does not apply where, as here, there is a manifest legislative intent for prospective application. Gibbons v. Gibbons, 86 N.J. 515, 522 (1981).

Our OPRA analysis here therefore must be guided by the state of the pre-amendment law as it existed at the time of the trial court's 2022 decision. The matter is not moot, since the trial court stayed enforcement of its order compelling disclosure, and the parties need appellate guidance on the merits of the legal analysis. See Malanga v. Twp. of W. Orange, 253 N.J. 291, 307 (2023) (describing the characteristics of a moot issue). We now proceed to that legal analysis.

### B.

We first address the issues of statutory interpretation under the pre-2024 version of OPRA. Before the statute was amended, a "government record" obtainable under OPRA was defined, in pertinent part, as any of a wide variety of documents that has been "made, maintained or kept on file in the course of his or its official business by any officer, commission, agency or authority of the State or of any political subdivision thereof." N.J.S.A. 47:1A-1.1 (emphasis added).

We are mindful that OPRA declares, as a general matter of public policy, that "government records shall be readily accessible for inspection, copying, or examination by the citizens of this State, with certain exceptions, for the protection of the public interest." N.J.S.A. 47:1A-1. The statute "shall be construed in favor of the public's right of access." Ibid. Our Supreme Court has noted the Legislature enacted OPRA "to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process." Mason v. City of Hoboken, 196 N.J. 51, 64 (2008) (citation omitted). "With broad public access to information about how state and local governments operate, citizens and the media can play a watchful role in . . . guarding against corruption and misconduct." Burnett v. Cnty. of Bergen, 198 N.J. 408, 414 (2009).

OPRA also includes what is known as a "privacy exception." That exception instructs that "a public agency has a responsibility and an obligation to safeguard from public access a citizen's personal information with which it has been entrusted when disclosure thereof would violate the citizen's reasonable expectation of privacy." N.J.S.A. 47:1A-1.

A public agency seeking to withhold records under the privacy exception "must present a colorable claim that public access to the records requested would

invade a person's objectively reasonable expectation of privacy."  Brennan v. Bergen Cnty. Prosecutor's Office, 233 N.J. 330, 342 (2018).  If such a colorable claim of privacy is alleged, the court must then balance the privacy interests of its citizens against the public's interest in disclosure of the private information.  Doe v. Poritz, 142 N.J. 1, 87-88; Burnett, 198 N.J. at 427 (adopting the Doe factors).  This analysis involves the weighing of seven factors:

> (1) the type of record requested; (2) the information it does or might contain; (3) the potential for harm in any subsequent nonconsensual disclosure; (4) the injury from disclosure to the relationship in which the record was generated; (5) the adequacy of safeguards to prevent unauthorized disclosure; (6) the degree of need for access; and (7) whether there is an express statutory mandate, articulated public policy, or other recognized public interest militating toward access.
>
> [Burnett, 198 N.J. at 427 (quoting Doe, 142 N.J. at 88).]

We note that no pre-amendment published opinions resolved the precise questions presented here:  i.e., OPRA's applicability to citizen email lists compiled by a vendor that operates a notification program in the manner performed by Everbridge/Nixle.[6]  We therefore examine those issues on a clean

---

[6] We note for completeness that in Rise Against Hate v. Cherry Hill Twp., A-1440-21 (App. Div. Mar. 29, 2023), a panel of this court reversed a decision by the same trial court that heard the present consolidated cases, and which had ordered similar disclosure of citizen email lists.  The Supreme Court

14

slate, employing the aforementioned de novo standard of review. Having done so, we respectfully reverse the trial court's decision, fundamentally for two reasons.

First, we differ with the trial court's legal conclusion that the citizen email lists qualify as "government records" within OPRA's pre-amendment definition. The email lists were compiled by a private vendor, Everbridge/Nixle. The citizens who enrolled in the notification program were expressly told their "information would not be shared with the City of Hoboken." The email lists were not "made" by a municipal employee. N.J.S.A. 47:1A-1.1. They were also not "maintained or kept on file" within the City's records. Ibid.

We recognize that, after the trial court issued its ruling, the City made use of the Everbridge/Nixle program by conducting a litigation-related survey of the users of the notification system, to collect data about the users' privacy preferences. But that litigation-related query does not appear to have been representative of the ordinary use of the notification system, which was generally a "one-direction" communication of news from the City to anonymous subscribers.

---

subsequently granted certification, but then dismissed the appeal, 254 N.J. 435 (2023), vacated, 258 N.J. 263 (2024). Notably, the Court's dismissal came after the OPRA amendments were signed into law.

We are also cognizant of plaintiff's argument that, as policy matter, a municipality should not be permitted to evade its OPRA disclosure obligations by delegating its records custodian functions to a private vendor. We discern no such attempted evasion here. The service provided by Everbridge/Nixle was designed to benefit the citizens who chose to be subscribers. It is akin to the municipality distributing a generic flyer detailing dates for trash collection. The information to the public is generated for an anonymous audience, and the City does not track who signed up for the service. The most logical reading of the term "government record" does not, in our view, encompass this scenario.

Second, even if we were to regard the citizen email lists as public records, the statutory privacy exception of N.J.S.A. 47:1A-1 weighs against disclosure. Of the seven Doe factors, we deem especially pertinent factors: (3) the potential for harm in any subsequent nonconsensual disclosure; (4) the injury from disclosure to the relationship in which the record was generated; (5) the lack of safeguards to prevent unauthorized disclosure; and (7) the public interest.

The potential for harm to the citizen subscribers should not be underestimated. They were promised the City would not be provided with their information when they signed up for the service. They were not informed that their information and email addresses would be conveyed to others, outside of

16

the function of them receiving municipal alerts. We take judicial notice that although some people freely share their personal email information with strangers, many do not. N.J.R.E. 201(b). The trial court's order lacks any safeguards on what plaintiff may do with the email addresses. They might be sold or disseminated to other persons and organizations who might flood the citizens with unwanted "spam" messages. That is tangible harm not protected by the court's decision. Lastly, the public interest does not mandate the turnover of the email lists. We respectfully part company with the trial court's contrary determination, particularly because, as we have stressed, the citizen subscribers were told their information would be protected.

As part of his legal argument, plaintiff relies upon Bozzi v. City of Jersey City, 248 N.J. 274 (2021), as supportive of disclosure. We read Bozzi to be highly distinguishable factually from this case.

In Bozzi, a requester who sought to solicit customers for its invisible fencing business sued the city under OPRA and the common law for refusing to provide it with names and addresses of dog owners contained in dog license records. The Law Division found in favor of the requestor and held that dog owners' names and addresses were not exempt from disclosure under OPRA. We affirmed disclosure, and so did the Supreme Court. Within its analysis, the

Court observed that "owning a dog is a substantially public endeavor in which people do not have a reasonable expectation of privacy that exempt their information from disclosure under the privacy clause of OPRA." Id. at 277. The Court further noted that the "key" to determining whether there is a reasonable expectation of privacy in information lies in the "distinction between actions and information typically kept private versus those extended to the public." Id. at 285. By contrast here, a citizen's conduct in signing up for the passive receipt of municipal news alerts is not a "public" act such as owning a dog or seeking a municipal license. The citizen subscribers retained a reasonable expectation of privacy not comparable to the status of the dog owners in Bozzi.

In sum, we part company with the trial court's OPRA analysis and conclude that disclosure was not required under the pre-amendment version of the statute. Because we are reversing the trial court's statutory ruling, the award to plaintiff of counsel fees under OPRA accordingly must be vacated as well. Gannett Satellite Info. Network, LLC v. Twp. of Neptune, 254 N.J. 242, 258 (2023); N.J.S.A. 47:1A-6. Plaintiff is no longer a "prevailing party" under the statute.

## C.

For largely similar reasons, we vacate the trial court's separate conclusion

that disclosure of the citizen email lists is mandated by the common law.

If a record is not available under OPRA, it may still be sought under a claim of a common law right of access. The common law right covers a broader range of "public records" but imposes three conditions on one's ability to gain access to a particular record. See Atl. City Convention Ctr. Auth. v. S. Jersey Pub. Co., 135 N.J. 53, 60 (1994) ("[A] limited class of records is unqualifiedly available to all citizens under the statute, while a much broader class of records is only qualifiedly available to the public under the common law.").

First, the document must be a public record; second, a requestor must demonstrate an "interest" in the subject matter of the record; third, the balance of interests, meaning the citizen's interest in disclosure weighed against the State's interest in non-disclosure, must favor the requesting party. See, e.g., Gannett Satellite, 254 N.J. at 256-57.

In order to constitute a "public record" subject to disclosure under the common law, the item must be "a written memorial" "made by a public officer," and the officer must be "authorized by law to make it." Ibid. (emphasis added). This element is not satisfied here. As we explain above, the citizen email lists were not made by a City official but were instead compiled by a third party vendor.

Even if the email lists were to comprise "public records," the common law balancing of interests strongly favors non-disclosure.[7]   See N. Jersey Newspapers Co. v. Passaic Cnty. Bd. of Chosen Freeholders, 127 N.J. 9, 16 (1992).

Under the common law analysis, a plaintiff bears the burden of establishing that his interest in disclosure outweighs the governments interest in non-disclosure.  See Home News v. State Dep't of Health, 144 N.J. 446, 454 (1996) (noting that a person seeking access must establish that balance of its interest in disclosure against public interest in confidentiality weighs in favor of disclosure).  The balancing process is fact sensitive.  See Rivera v. Union Cnty. Prosecutor's Off., 250 N.J. 124, 146 (2022) (emphasizing the "fact-specific" nature of the balancing test, and stating that the trial judge should "elicit facts about the parties' interests" before embarking on the balancing process).

The Supreme Court has enumerated the relevant factors for courts to weigh in this common law context as follows:

> (1) the extent to which disclosure will impede agency functions by discouraging citizens from providing information to the government; (2) the effect disclosure may have upon persons who have given such

---

[7] We assume for the sake of brevity that plaintiff expressed a sufficient interest in obtaining disclosure of the email lists in light of his desire to inform other residents about the pending school bond vote.

20                                                   A-2634-22

information, and whether they did so in reliance that their identities would not be disclosed; (3) the extent to which agency self-evaluation, program improvement, or other decisionmaking will be chilled by disclosure; (4) the degree to which the information sought includes factual data as opposed to evaluative reports of policymakers; (5) whether any findings of public misconduct have been insufficiently corrected by remedial measures instituted by the investigative agency; and (6) whether any agency disciplinary or investigatory proceedings have arisen that may circumscribe the individual's asserted need for the materials.

[Gannett Satellite, 254 N.J. at 257 (quoting Loigman v. Kimmelman, 102 N.J. 98, 113 (1986)).]

To the extent pertinent, these factors weigh against disclosure. The dissemination of the citizen email addresses will surely cause a number of subscribers to withdraw from such notification programs or refrain from enrolling in them in the first place (factor 1). That will reduce the public benefit of such alerts that include improving safety by helping citizens avoid flooding in a certain part of the City, notifying them that a planned parade or road repair will affect traffic, or alerting them to a police emergency. As we have noted, disclosure would greatly undercut the reliance interests of the citizen subscribers (factor 2). The remaining factors concerning agency self-evaluation, policymaking data, misconduct investigations, and so forth are not materially

affected by knowing which citizens have signed up for the municipal alert service.

In short, the citizen email addresses are not "public records" under the common law and, moreover, there are strong reasons favoring their non-disclosure.  We accordingly reverse the trial court's ruling on this issue as well.

### III.

To the extent we have not discussed them, the other arguments raised on the appeal lack sufficient merit to warrant discussion.  R. 2:11-3(e)(1)(E).

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division